**Mark Owen McGUIRE, Plaintiff–Appellant,**

v.

**Wayne ESTELLE, Warden, Defendant–Appellee.**

No. 87–2522.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1988.

Opinion May 8, 1989.

Withdrawn April 23, 1990.

Decided May 4, 1990.

Ann Hardgrove Vorhis, San Francisco, Cal., for plaintiff-appellant.

Herbert F. Wilkinson, Supervising Deputy Atty. Gen., San Francisco, Cal., for defendant-appellee.

Before SCHROEDER and WIGGINS, Circuit Judges, and STEPHENS *, District Judge.

### ORDER

The opinion filed May 8, 1989, 873 F.2d 1323, is withdrawn and is vacated.

SO ORDERED.

* Hon. Albert Lee Stephens, Jr., United States District Judge for the Central District of California, sitting by designation.

WIGGINS, Circuit Judge:

Mark McGuire ("McGuire") appeals from the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254(a). McGuire was convicted of second degree murder and is now serving a fifteen year to life sentence in a California state prison. McGuire contends that the admission of evidence of prior acts against him at his trial, coupled with an instruction that permitted the jury to consider those prior acts as evidence of his guilt of the crime charged, were errors that denied him due process of law under the Fourteenth Amendment. We find that his contention has merit and REVERSE.

## FACTS AND PROCEEDINGS BELOW

Because a proper consideration of McGuire's due process claim requires weighing the prejudice to him of the error he alleges, we examine the trial testimony in some detail.

At about 9:00 p.m., on July 7, 1981, McGuire and his wife brought their six month old baby girl to the emergency room of a hospital in Hayward, California. The baby was bluish in color and was not breathing. The hospital staff were unable to save the baby and she was pronounced dead at about 9:45 p.m.

The father, McGuire, was charged with the second degree murder of his child.

At trial, the prosecution called Dr. Levine, the doctor who examined the baby at the hospital. She testified that the child was essentially lifeless and without vital signs when she was brought into the hospital. The doctor also testified that the baby had a large and relatively recent bruise on the upper left chest area with multiple bruise marks around it, black and blue marks on her ears, and scar tissue indicating a healed tearing around the anus. Doctor Levine opined that the rectal tear was not caused by constipation or fecal impactment. She testified that such scarring probably resulted from the forceful insertion of a finger or some other foreign object. The doctor also testified that the baby had suffered from seven earlier rib fractures.

A different doctor performed an autopsy on the baby and testified that there were at least 17 contusions on the baby's chest and 29 more on her abdomen. He testified that his examination of the internal organs revealed that the liver was split in half, her pancreas was lacerated and split apart, her lower right lung and large vein from the heart were damaged, and part of her intestine was lacerated. The doctor also testified to rectal tearing at least six weeks old and to evidence of several partially healed rib fractures approximately seven weeks old.

McGuire made timely objection to all evidence of prior injuries as not being connected to him. The objections were overruled.

None of the foregoing evidence of injury to the child included evidence of who caused the injuries to her.

The prosecution also called a witness who had overheard McGuire talking to his wife in the emergency room of the hospital. The witness stated that McGuire's wife asked him "what really had happened?" and McGuire is reported to have responded that the baby had fallen from the couch.

A police officer was called by the prosecution. He testified that McGuire had told him that the child had fallen from the couch. The officer then told McGuire that the baby's injuries were inconsistent with a fall from the couch. McGuire thereupon responded that "maybe some Mexicans came in while I was upstairs."

McGuire's wife was next called as a witness by the prosecution. She was granted transactional immunity for her testimony although she had made no statement to the prosecutor prior to the trial. When asked about the circumstances of the baby's death, she testified that she, and not her husband, had beaten the baby. She gave a confused account of having struck the baby in the afternoon of July 7, 1981 and that the child did not move, cry, or cough thereafter.

McGuire's wife testified that on the afternoon of the 7th, after she struck the child, she left the house for about ten min-

utes and when she returned, the child was not breathing. She stated that she asked her husband what had happened and he said the child had fallen from the couch and struck the walker. She also testified that several weeks prior to the baby's death, she inserted her finger into the baby's rectum in an attempt to relieve her of constipation. She also testified to staying at a neighbor's house for four days prior to the 7th and had made inquiries about a battered woman's shelter.

The prosecution introduced evidence that a fall from a couch could not have produced the injuries causing the baby's death. The prosecution also introduced evidence that McGuire had treated the baby roughly in the past.

The defense countered with witnesses who testified they had never seen McGuire abuse the child. McGuire did not testify in his own defense.

On March 19, 1982, the jury returned a verdict of second degree murder against McGuire. On January 15, 1985, the California Court of Appeal affirmed his conviction. McGuire petitioned for a hearing before the California Supreme Court. On March 21, 1985, the California Supreme Court issued a "postcard denial" of the petition. It did so without any citation or comment.

On August 30, 1985, McGuire filed a petition for writ of habeas corpus in federal district court under 28 U.S.C. § 2254(a). Order to show cause issued on February 26, 1986. In its original response, the state of California did not answer on the merits but argued that McGuire had failed to exhaust his state remedies. The district court, relying on *Maxwell v. Sumner*, 673 F.2d 1031, 1034 n. 1 (9th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982), ruled against the state on the exhaustion issue and ordered it to answer on the merits. After the state did so, the district court denied McGuire's petition on July 15, 1987. It held that the admission of the evidence of the prior injuries to the child, and a jury instruction relating to that evidence, was proper under California evidence rules. The court also found that the

evidence was relevant to contradict a pretrial statement made by McGuire, and offered at trial by the prosecution, that the baby's injuries were caused by her falling off a couch. The court also rejected McGuire's fifth amendment prosecutorial misconduct and denial of discovery claims. McGuire timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## I. EXHAUSTION

28 U.S.C. § 2254(b) states: "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State...." On direct appeal to the California appellate court, McGuire raised four issues: (1) admission of evidence of prior injuries to the baby and an errant "other crimes" instruction, (2) a fifth amendment claim that the original trial court erroneously admitted evidence of a statement made to the police that "some Mexicans" might have come into his home and presumably injured the baby, (3) a second fifth amendment claim relating to statements he made to the police without *Miranda* warnings the day before he was arrested, and (4) a prosecutorial misconduct claim. In his petition to the California Supreme Court, McGuire raised only the issues of the evidence of prior injuries and the "Mexican intruder" statement. The California Supreme Court denied his petition without a hearing, comment, or citation. In his petition for habeas corpus, however, McGuire raised all four claims that he had previously raised before the California appellate court.

A petition containing both exhausted and unexhausted claims must be dismissed by the federal courts. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982). Although McGuire presented only two of his four issues to the California Supreme Court, he has properly exhausted his state remedies. In *Maxwell*, we stated that:

[I]f a claim has been briefed and argued before the [California] court of appeal,

failure to assert it in the petition to the California Supreme Court does not normally waive the claim ... [W]hen the California Supreme Court grants a hearing, its order effectively vacates the order of the court of appeal; the California Supreme Court then decides each issue in the case as if it were on original appeal from the trial court, "regardless of the grounds relied on in the petition."

*Maxwell,* 673 F.2d at 1034 n. 1 (citations omitted).[1] Thus we may reach the merits of McGuire's claims.

## II. THE CONSTITUTIONALITY OF APPELLANT'S CONVICTION

■ We review the district court's denial of a petition for a writ of habeas corpus de novo. *Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985). A state prisoner is entitled to habeas relief only if he is held in violation of the constitution, laws, or treaties of the United States. *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); 28 U.S.C. § 2254(a). McGuire contends that the procedures used to convict him in state court violated his fourteenth amendment right to due process. U.S. Const. Amend XIV. We agree.

■ A claim for deprivation of due process will succeed only if the trial court's errors rendered the trial arbitrary or fundamentally unfair. *Pennywell v. Rushen,* 705 F.2d 355, 357 (9th Cir.1983). In the instant case we find that the aggregate effect of the admittance of irrelevant, highly prejudicial evidence, compounded by the trial court's instruction to use that evidence in the most prejudicial manner possible, rendered appellant's trial arbitrary and fundamentally unfair.

### A. THE ADMITTANCE OF IRRELEVANT, PREJUDICIAL EVIDENCE

The trial court admitted extensive evidence of prior physical abuse the baby had suffered, including evidence of possible sexual abuse. However, that evidence has no relevance to appellant because the prosecution did not establish that appellant inflicted those injuries.

■ In order for evidence to be relevant, it must have some probative value. *See, e.g.,* Fed.R.Evid. 401 (evidence to be relevant must make the determination of the action more probable or less probable than it would be without the evidence). Evidence cannot have probative value unless a party connects it to the defendant in some meaningful way. *See, e.g., United States v. Hooten,* 662 F.2d 628, 635 (9th Cir.1981), *cert. denied,* 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982) (in order for prior act evidence to be admissible under the Fed.R. Evid. it must be "similar and close enough in time to be relevant"); *People v. Rivera,* 41 Cal.3d 388, 392, 710 P.2d 362, 364, 221 Cal.Rptr. 562, 564 (1985) (in bank) ("In order for evidence of a prior [act] to have a tendency to prove the defendant's identity as the perpetrator of the charged offense, the [prior act and the charged offense] must have enough shared characteristics to raise a strong inference that they were committed by the same person.... It is not enough that the two acts contain common marks.").

In the instant case, the prosecution made no such connection. The prosecution elicited evidence that McGuire was rough with the baby, and that on one occasion McGuire had squeezed the baby's cheeks. Daisy McGuire also stated that she feared leaving the baby alone with McGuire. We recognize the temptation to find that such evidence is enough to infer that McGuire caused the prior rectal tearing and the broken ribs. However, we cannot permit a jury that temptation. Evidence of McGuire's petty meanness does not establish that he committed, or is even capable

---

1. The *Maxwell* "rule" will no longer be effective for petitions presented to the California Supreme Court after March 6, 1985. On that date, new California Supreme Court appellate rules came into effect. Presently, the California rules provide that "[o]nly the issues set forth in the petition and answer or fairly included in them need be considered by the court." Cal. Rules Sup.Ct. & Cts. of Appeal 28(e)(2) and Advisory Committee Comment, ¶ 4. The present case, however, is governed by *Maxwell.* The appellant filed his petition for hearing on February 26, 1985, before the effective date of the new California rules.

of, the extensive physical abuse inflicted on the child. It is precisely because anyone, including Daisy McGuire, could have inflicted those injuries that makes the prior injury evidence irrelevant.

■ We emphasize that the trial court's error was not simply that it admitted the prior evidence under the wrong evidentiary theory. Nor do we dispute that there are constitutionally permissible uses for admitting evidence of prior bad acts. *See* Fed.R. Evid. 404(b) (evidence of other crimes, wrongs or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge identity, or absence of mistake or accident); *United States v. Lewis*, 837 F.2d 415, 418–419 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988) (evidence of prior child abuse properly admitted to show intent). However, acts which the prosecution did not connect to appellant cannot be characterized as *his* prior bad acts.

Furthermore, we find the introduction of such prior injury evidence highly prejudicial. The prosecution introduced evidence of prior injuries to the baby to establish that appellant was a child abuser, and for no other purpose, in a murder trial for the death of his child. The trial court incorrectly admitted the evidence pursuant to California law allowing past injury evidence to establish the "Battered Child Syndrome." The Battered Child Syndrome allows proof of past injuries to prove the child's present injuries did not occur accidentally. *See People v. Jackson*, 18 Cal. App.3d 504, 506, 95 Cal.Rptr. 919, 921 (1971); *Landeros v. Flood*, 17 Cal.3d 399, 409, 551 P.2d 389, 393, 131 Cal.Rptr. 69, 73 (1976).

However, in the instant case, no claim was made that the child died accidentally. The prosecution attempted to prove Mark McGuire deliberately did it. The defense attempted to prove Daisy McGuire deliberately did it. Although the prosecution did not succeed in proving that the appellant caused the prior injuries, we cannot ignore that a trial of the grisly murder of an innocent baby implicates highly charged emotions. The unproven characterization

of appellant as a child abuser maximized the prejudice flowing from the irrelevant evidence. *See Dudley v. Duckworth,* 854 F.2d 967 (7th Cir.1988) (granting habeas relief where prejudicial effective evidence so outweighed probative value that result was a denial of fundamental fairness); *Osborne v. Wainwright,* 720 F.2d 1237 (11th Cir.1983) (reversing and remanding a denial of habeas corpus petition on basis that prejudicial effect of evidence might have risen to such magnitude as to deny fundamental fairness); *Bisaccia v. Attorney General of State of New Jersey,* 623 F.2d 307 (3d Cir.1980) (same).

## B. *IMPROPER JURY INSTRUCTIONS*

The trial court did not merely admit irrelevant, highly prejudicial evidence without comment. The trial court *instructed* the jury to use that evidence in the most improper way possible. We assume that the jury followed its instructions. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 604, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985). The trial court's jury instructions stated:

> Evidence has been introduced for the purpose of showing that the defendant committed acts similar to those constituting a crime other than that for which he is on trial. Such evidence, if believed, was not received, and may not be considered by you to prove that he is a person of bad character or that he had a disposition to commit crimes. Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show three things:
> 1. The impeachment of Daisy McGuire's testimony that she had no cause to be afraid of the defendant,
> 2. To establish the battered child syndrome, and
> 3. Also a connection between the other two offense (sic) and the one of which the defendant is accused *so that it may be logically concluded that if the defendant committed other offenses, he also committed the crime charged in the*

*case.* You are not permitted to consider evidence for any other purpose.

(emphasis added).

Subsection 3 of the instruction is erroneous.[2] It permits the jury to make a direct determination of guilt by concluding that appellant committed prior bad acts. The rejection of such use of circumstantial character evidence in criminal cases has become "so deeply imbedded in our jurisprudence as to assume almost constitutional proportions...." Fed.R.Evid. 404(a) advisory committee's note.

Not only have we never condoned an instruction which permits a finding of guilt based on a conclusion that the appellant committed prior bad acts, we have consistently stressed the importance of a *limiting* instruction to confine the use of prior bad act evidence to the proper purpose for which the court admitted it. *See United States v. Green,* 648 F.2d 587, 593 (9th Cir.1981) (admission of bad act evidence in conjunction with failure of trial judge to provide limiting instruction following admission of bad act evidence required reversal); *cf. Butcher v. Marquez,* 758 F.2d 373, 378 (9th Cir.1985) (no due process violation resulted from wrongful admission of prejudicial evidence where instructions limited use of that evidence to find intent); *United States v. McCown,* 711 F.2d 1441, 1454 (9th Cir.1983) (no due process violation resulted from admission of prior bad acts evidence where prejudice was minimal and trial judge offered to give a limiting instruction).

██ The damage done by subsection 3 is not limited by a qualifying instruction by the court. Nor is subsection 3 limited by the preceding subsections of the instruction. The first subsection simply warned the jury not to use the evidence of prior bad acts to find that McGuire was a bad person and therefore infer that McGuire was likely to have committed this crime. Subsection 3, however, informed the jury that it may find McGuire guilty of the offense charged if it logically concluded

that he committed the other earlier offenses. For these reasons, the faulty instruction considered along with the admittance of the prejudicial evidence "so infected the entire trial that the resulting conviction violate[d] due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Nor do we believe that this error can be considered harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Although there was evidence suggesting McGuire's guilt, this evidence was certainly not overwhelming. *See Dudley v. Duckworth,* 854 F.2d 967, 972 (7th Cir.1988) (error not harmless even when evidence of petitioner's guilt was "impressive but not overwhelming.").

### III. CONCLUSION

We find that the jury instruction which permitted the direct determination of guilt from evidence of prior injuries not connected to McGuire denied him due process. The severity of these errors sets this case apart from arguably similar cases in which we rejected claims that evidentiary error rendered a trial fundamentally unfair. For example, in *Lewis,* we found no due process error where the trial court admitted evidence of prior child abuse in a defendant's trial for the murder of his son. 837 F.2d at 418–19. However, *Lewis* suffered from neither of the errors we find determinative in the instant case. In *Lewis,* the testimony of two witnesses connected the defendant to the infliction of the prior injuries, and the trial court provided a limiting instruction. *Id.* at 419.

Because the prejudicial effect of the errors discussed above amount to a denial of due process, we grant McGuire's habeas petition. However, we are also not blind to the fact that apart from those errors, only the barest threads connect McGuire to the crime. True, given the pattern of most child abuse cases, it is not unreasonable to assume that one or both of the baby's

---

**2.** It appears that the trial court's erroneous instruction was the result of an incorrect reading of CALJIC 2.50 (1979 Revision). This standard jury instruction has been clarified to avoid the misunderstanding which occurred here. *See* CALJIC 2.50 (1987 Revision).

primary care givers were responsible for the baby's injuries and death. We are also mindful that in the emergency room, McGuire answered unconvincingly in response to Daisy McGuire's accusation that McGuire bore responsibility for the baby's injuries leading to death. And evidence existed that McGuire had treated his wife and the baby roughly in the past. But these are mere shadows of guilt which leave ample room for reasonable doubt. Due process requires more than a simple intuitive feeling that the father may be guilty. It requires convincing proof.

We REVERSE and REMAND for a new trial.