# ESTELLE, WARDEN *v.* McGUIRE

No. 90–1074.   Argued October 9, 1991—Decided December 4, 1991

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, SCALIA, KENNEDY, and SOUTER, JJ., joined, and in Part I of

which STEVENS and O'CONNOR, JJ., joined.   O'CONNOR, J., filed an opinion concurring in part and dissenting in part, in which STEVENS, J., joined, *post*, p. 75.   THOMAS, J., took no part in the consideration or decision of the case.

*Dane R. Gillette,* Deputy Attorney General of California, argued the cause for petitioner.   With him on the briefs were *Daniel E. Lungren,* Attorney General, *George Williamson,* Chief Assistant Attorney General, *John H. Sugiyama,* Senior Assistant Attorney General, and *Morris Beatus,* Supervising Deputy Attorney General.

*Ann Hardgrove Voris,* by appointment of the Court, 499 U. S. 917, argued the cause and filed a brief for respondent.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Mark Owen McGuire was found guilty in a California state court of second-degree murder for the killing of his infant daughter.   After unsuccessfully challenging his conviction on appeal in the state courts, McGuire sought federal habeas relief, and the United States Court of Appeals for the Ninth Circuit set aside his conviction.   902 F. 2d 749 (1990).   We hold that in so doing the Court of Appeals exceeded the limited scope of federal habeas review of state convictions.

McGuire and his wife brought their 6-month-old daughter, Tori, to a hospital in Hayward, California.   The baby was bluish in color and was not breathing.   The attending physician noticed a large and relatively recent bruise on Tori's chest with multiple bruises around it, as well as black and

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Clifford M. Sloan;* and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger.*

*Charles D. Weisselberg* and *Dennis E. Curtis* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging affirmance.

blue marks around her ears. Efforts to revive the child were unsuccessful; Tori died 45 minutes after being brought to the hospital. An autopsy revealed 17 contusions on the baby's chest, 29 contusions in her abdominal area, a split liver, a split pancreas, a lacerated large intestine, and damage to her heart and one of her lungs. The autopsy also uncovered evidence of rectal tearing, which was at least six weeks old, and evidence of partially healed rib fractures, which were approximately seven weeks old.

The police questioned McGuire and his wife. McGuire stated his belief that Tori's injuries must have resulted from a fall off the family couch. He told the police that when his wife went out to make a telephone call, he went upstairs, leaving Tori lying on the couch; when he heard the baby cry, he came back downstairs to find her lying on the floor. After a police officer expressed skepticism at this explanation, McGuire replied that "[m]aybe some Mexicans came in" while he was upstairs. *Id.*, at 751. During separate questioning, McGuire's wife stated that she had not hit Tori, and that she was unsure whether her husband had done so.

McGuire was charged with second-degree murder. At trial, the prosecution introduced both the statements made by McGuire to police and the medical evidence, including the evidence of prior rectal tearing and fractured ribs. Two physicians testified that Tori was a battered child, relying in part on the prior rib and rectal injuries, as well as on the more recent injuries. McGuire's neighbor testified that she had seen McGuire carry Tori by one of her arms to the car and roughly pinch her cheeks together when she cried. The neighbor added that McGuire's wife had expressed fear in leaving Tori alone with McGuire, because he had been rough with the baby and "did bad things" to her.

In addition, the prosecution called a witness who had overheard a conversation between McGuire and his wife in the hospital emergency room the night of Tori's death. According to the witness, McGuire's wife several times insistently

asked, "What really happened?" McGuire replied that he "didn't know," and that he "guessed" the baby fell off the couch. His wife continued to press for an answer, stating, "I am very patient. I can wait a long time. I want to know what really happened." Finally, she told McGuire that "the baby was alright when I left. You are responsible." App. 44; Brief for United States as *Amicus Curiae* 3–4. McGuire's wife was called by the prosecution to testify at trial, after having been granted transactional immunity from future prosecution. In contrast to her prior statement to the police and her declarations at the hospital, she stated that she had beaten Tori on the day of her death before her husband arrived home. The jury convicted McGuire of second-degree murder.

The California Court of Appeal affirmed McGuire's conviction. The court observed that the evidence of prior rib and rectal injuries was introduced to prove "battered child syndrome." That syndrome exists when a child has sustained repeated and/or serious injuries by nonaccidental means. *People* v. *Bledsoe,* 36 Cal. 3d 236, 249, 681 P. 2d 291, 299 (1984). After reviewing California authority on the subject, the court concluded that "proof of Tori's 'prior injuries' tending to establish the 'battered child syndrome' was patently proper." App. 47. The California Supreme Court denied review.

McGuire then filed a petition for habeas corpus relief in the United States District Court for the Northern District of California. That court denied relief. The Court of Appeals for the Ninth Circuit reversed and granted McGuire's habeas petition. The court ruled that the prior injury evidence was erroneously admitted to establish battered child syndrome, because no evidence linked McGuire to the prior injuries and no claim had been made at trial that the baby died accidentally. In addition, the court believed that the trial court's instruction on the use of prior act evidence allowed a finding of guilt based simply on a judgment that

McGuire committed the prior bad acts.[1]  The court con-
cluded that the admission of the evidence, in conjunction
with the prejudicial instruction, "rendered [McGuire's] trial
arbitrary and fundamentally unfair" in violation of due proc-
ess.  902 F. 2d, at 753.  We hold that none of the alleged
errors rise to the level of a due process violation, and so
reverse.

I

We first consider whether the admission of the prior injury
evidence justified habeas relief.  In ruling that McGuire's
due process rights were violated by the admission of the evi-
dence, the Court of Appeals relied in part on its conclusion
that the evidence was "incorrectly admitted . . . pursuant to
California law."  *Id.*, at 754.  Such an inquiry, however, is
no part of a federal court's habeas review of a state convic-
tion.  We have stated many times that "federal habeas cor-
pus relief does not lie for errors of state law."  *Lewis* v. *Jef-
fers*, 497 U. S. 764, 780 (1990); see also *Pulley* v. *Harris*, 465
U. S. 37, 41 (1984).  Today, we reemphasize that it is not the

---

[1] The court instructed the jury:

"Evidence has been introduced for the purpose of showing that the De-
fendant committed acts similar to those constituting a crime other than
that for which he is on trial.  Such evidence, if believed, was not received,
and may not be considered by you[,] to prove that he is a person of bad
character or that he has a disposition to commit crimes.  Such evidence
was received and may be considered by you only for the limited purpose
of determining if it tends to show three things:

"1. The impeachment of Daisy McGuire's testimony that she had no
cause to be afraid of the Defendant,

"2. To establish the battered child syndrome, and

"3. Also a clear connection between the other two offense[s] and the one
of which the Defendant is accused, so that it may be logically concluded
that if the Defendant committed other offenses, he also committed the
crime charged in this case.

"For the limited purpose for which you may consider such evidence,
you must weigh it in the same manner as you do all other evidence in the
case.  You are not permitted to consider evidence for any other pur-
pose."  App. 40–41.

province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U. S. C. § 2241; *Rose* v. *Hodges,* 423 U. S. 19, 21 (1975) *(per curiam).*[2]

We thus turn to the question whether the admission of the evidence violated McGuire's federal constitutional rights. California law allows the prosecution to introduce expert testimony and evidence related to prior injuries in order to prove "battered child syndrome." *People* v. *Bledsoe, supra,* at 249, 681 P. 2d, at 299; *Landeros* v. *Flood,* 17 Cal. 3d 399, 409, 551 P. 2d 389, 393 (1976); *People* v. *Jackson,* 18 Cal. App. 3d 504, 506–508, 95 Cal. Rptr. 919, 921–922 (1971). The demonstration of battered child syndrome "simply indicates that a child found with [serious, repeated injuries] has not suffered those injuries by accidental means." *Id.,* at 507, 95 Cal. Rptr., at 921. Thus, evidence demonstrating battered child syndrome helps to prove that the child died at the hands of another and not by falling off a couch, for example; it also tends to establish that the "other," whoever it may be, inflicted the injuries intentionally. When offered to show that certain injuries are a product of child abuse, rather than accident, evidence of prior injuries is relevant even though it does not purport to prove the identity of the person who might have inflicted those injuries. See *id.,* at 506–508, 95 Cal. Rptr., at 921–922; *People* v. *Bledsoe, supra,* at 249, 681 P. 2d, at 299. Because the prosecution had

---

[2] In this regard, we observe that the Ninth Circuit reached a similar result in *Blair* v. *McCarthy,* 881 F. 2d 602 (1989), cert. granted, 498 U. S. 807, vacated as moot and remanded, 498 U. S. 954 (1990). In that case, the Court of Appeals based its grant of habeas relief solely on a violation of state law that prejudiced the defendant. *Blair* v. *McCarthy, supra,* at 603–604. As our discussion above makes clear, such state-law violations provide no basis for federal habeas relief.

charged McGuire with second-degree murder, it was required to prove that Tori's death was caused by the defendant's intentional act. Proof of Tori's battered child status helped to do just that; although not linked by any direct evidence to McGuire, the evidence demonstrated that Tori's death was the result of an intentional act by *someone*, and not an accident. The Court of Appeals, however, ignored the principle of battered child syndrome evidence in holding that this evidence was incorrectly admitted. For example, the court stated that "[e]vidence cannot have probative value unless a party connects it to the defendant in some meaningful way." 902 F. 2d, at 753. We conclude that the evidence of prior injuries presented at McGuire's trial, whether it was directly linked to McGuire or not, was probative on the question of the intent with which the person who caused the injuries acted.

In holding the prior injury evidence inadmissible, the Court of Appeals also relied on the theory that, because no claim was made at trial that Tori died accidentally, the battered child syndrome evidence was irrelevant and violative of due process. *Id.*, at 754. This ruling ignores the fact that the prosecution must prove all the elements of a criminal offense beyond a reasonable doubt. In this second-degree murder case, for example, the prosecution was required to demonstrate that the killing was intentional. Cal. Penal Code Ann. §§ 187, 189 (West 1988). By eliminating the possibility of accident, the evidence regarding battered child syndrome was clearly probative of that essential element, especially in light of the fact that McGuire had claimed prior to trial that Tori had injured herself by falling from the couch. The Court of Appeals, however, ruled that the evidence should have been excluded because McGuire did not raise the defense of accidental death at trial. But the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense. In the federal courts, "[a]

simple plea of not guilty . . . puts the prosecution to its proof as to all elements of the crime charged." *Mathews* v. *United States*, 485 U. S. 58, 64–65 (1988). Neither the Court of Appeals nor the parties have given us any reason to think that the rule is different in California. The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point.

Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial. We hold that McGuire's due process rights were not violated by the admission of the evidence. See *Spencer* v. *Texas*, 385 U. S. 554, 563–564 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. . . . But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure") (citations omitted).

## II

The Court of Appeals, however, did not rely solely on a finding that the admission of the evidence was unconstitutional. It based its decision in part on a belief that the instruction given by the trial court, set forth in n. 1, *supra*, allowed the jury to consider the prior injury evidence for more than simply proof of the battered child syndrome, and thereby violated McGuire's due process rights. McGuire focuses on the portion of the instruction explaining to the jury that the prior injury evidence

"was received and may be considered by you only for the limited purpose of determining if it tends to show . . . a clear connection between the other two offense[s] and the one of which the Defendant is accused, so that it may be logically concluded that if the Defendant committed other offenses, he also committed the crime charged in this case." App. 41.

McGuire argues that, despite the absence of any direct evidence showing that he caused the rib and rectal injuries, the instruction told the jury to find that he had committed those prior offenses. Furthermore, he argues, the instruction left the jury with the mistaken impression that it could base its finding of guilt on the simple fact that he had previously harmed Tori. Under McGuire's reading, the instruction is transformed into a propensity instruction, allowing the jury to consider as evidence of his guilt the fact that his prior acts show a disposition to commit this type of crime. This, he contends, violates the Due Process Clause.

In arguing his point, McGuire makes much of the fact that, in giving its instruction, the trial court deviated in part from standard jury instruction 2.50, 1 California Jury Instructions, Criminal (4th ed. 1979) (CALJIC).[3] As we have stated above, however, the fact that the instruction was allegedly incorrect under state law is not a basis for habeas

---

[3] Meticulous compliance with CALJIC 2.50, as in effect at McGuire's trial, would have led the trial court to instruct the jury that the prior injury evidence

"was received and may be considered by you only for the limited purpose of determining if it tends to show:

"*A characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case which would further tend to show* a clear connection between the other offense[s] and the one of which defendant is accused so that it may be logically concluded that if defendant committed the other offense[s] he also committed the crime charged in this case" (portion in italics was omitted from the actual jury instruction given at McGuire's trial).

72

relief. See *Marshall* v. *Lonberger,* 459 U. S. 422, 438, n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the CALJIC model. Nor do our habeas powers allow us to reverse McGuire's conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case. See Cal. Evid. Code Ann. § 1101(b) (West 1988). The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp* v. *Naughten,* 414 U. S. 141, 147 (1973); see also *Henderson* v. *Kibbe,* 431 U. S. 145, 154 (1977); *Donnelly* v. *DeChristoforo,* 416 U. S. 637, 643 (1974) (" '[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional] right' "). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp* v. *Naughten, supra,* at 147. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde* v. *California,* 494 U. S. 370, 380 (1990).[4] And we also bear

---

[4] We acknowledge that language in the later cases of *Cage* v. *Louisiana,* 498 U. S. 39 (1990), and *Yates* v. *Evatt,* 500 U. S. 391 (1991), might be read as endorsing a different standard of review for jury instructions. See *Cage, supra,* at 41 ("In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole"); *Yates, supra,* at 401 ("We think a reasonable juror would have understood the [instruction] to mean . . ."). In *Boyde,* however, we made it a point to settle on a single standard of review for jury instructions—the "reasonable likelihood" standard—after considering the many different phrasings that had

in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling* v. *United States*, 493 U. S. 342, 352 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Ibid.*

McGuire first claims that the instruction directed the jury to find that he had caused the prior injuries, thereby effectively taking that question from the jury. One might argue that the "two offense[s]" referred to in the instruction were McGuire's pinching of the child's cheeks and the lifting of the child by her arm. When read in context, however, we conclude that the most likely interpretation is that the reference was to the rectal tearing and fractured ribs. McGuire argues that, despite the lack of any direct evidence linking him to those injuries, the instruction directed the jury to find that he had committed them. This claim is clearly foreclosed, however, by the language of the instruction. The challenged portion of the instruction included the words "if the Defendant committed other offenses." App. 41. By including this phrase, the trial court unquestionably left it to the jury to determine whether McGuire committed the prior acts; *only if* the jury believed he was the perpetrator could it use the evidence in deciding whether McGuire was guilty of the crime charged. Therefore, if the jury did not believe McGuire caused the prior injuries, he was not harmed by the challenged portion of the instruction. To the extent that the jury may have believed McGuire committed the prior acts and used that as a factor in its deliberation, we observe that there was sufficient evidence to sustain such a jury

---

previously been used by this Court. 494 U. S., at 379–380 (considering and rejecting standards that required examination of either what a reasonable juror "could" have done or "would" have done). So that we may once again speak with one voice on this issue, we now disapprove the standard of review language in *Cage* and *Yates,* and reaffirm the standard set out in *Boyde.*

finding by a preponderance of the evidence. Cf. *People* v. *Simon*, 184 Cal. App. 3d 125, 134, 228 Cal. Rptr. 855, 858 (1986); *Huddleston* v. *United States*, 485 U. S. 681, 690 (1988). The proof of battered child syndrome itself narrowed the group of possible perpetrators to McGuire and his wife, because they were the only two people regularly caring for Tori during her short life. See *People* v. *Jackson*, 18 Cal. App. 3d, at 507, 95 Cal. Rptr., at 921 ("Only someone regularly 'caring' for the child has the continuing opportunity to inflict these types of injuries; an isolated contact with a vicious stranger would not result in this pattern of successive injuries stretching through several months"). A neighbor testified that she had seen McGuire treat Tori roughly on two occasions, and that McGuire's wife was scared to leave Tori alone with McGuire because he "did bad things" to her; the neighbor further testified that she had never seen McGuire's wife abuse the child in any way. Futhermore, when being questioned by the police after Tori died, McGuire's wife stated that she observed bruises on the baby's body when bathing her. When asked by the police for an explanation, she replied, "I don't really know, you know, I am not the only one who is taking care of her." App. 131. The evidence described, along with other evidence in the record, convinces us that there was sufficient proof for the jury to conclude, if it so desired, that McGuire caused the prior rib and rectal injuries.

McGuire also contends that, even if the determination of the perpetrator was left to the jury, the instruction constituted a "propensity" instruction, allowing the jury to base its determination of guilt in part upon the conclusion that McGuire had committed the prior acts and therefore had a propensity to commit this type of crime. While the instruction was not as clear as it might have been, we find that there is not a "reasonable likelihood" that the jury would have concluded that this instruction, read in the context of other instructions, authorized the use of propensity evidence

pure and simple. *Boyde* v. *California, supra,* at 380. It seems far more likely that the jury understood the instruction, *supra,* at 71, to mean that *if* it found a "clear connection" between the prior injuries and the instant injuries, and *if* it found that McGuire had committed the prior injuries, then it could use that fact in determining that McGuire committed the crime charged. The use of the evidence of prior offenses permitted by this instruction was therefore parallel to the familiar use of evidence of prior acts for the purpose of showing intent, identity, motive, or plan. See, *e. g.,* Fed. Rule Evid. 404(b). Furthermore, the trial court guarded against possible misuse of the instruction by specifically advising the jury that the "[prior injury] evidence, if believed, was not received, and may not be considered by you[,] to prove that [McGuire] is a person of bad character or that he has a disposition to commit crimes." See n. 1, *supra.* Especially in light of this limiting provision, we reject McGuire's claim that the instruction should be viewed as a propensity instruction.[5]

We therefore hold that neither the introduction of the challenged evidence, nor the jury instruction as to its use, "so infused the trial with unfairness as to deny due process of law." *Lisenba* v. *California,* 314 U. S. 219, 228 (1941); see also *Donnelly* v. *DeChristoforo,* 416 U. S., at 643. The judgment of the Court of Appeals is therefore

*Reversed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE O'CONNOR, with whom JUSTICE STEVENS joins, concurring in part and dissenting in part.

I agree with the Court that the evidence of battered child syndrome was relevant. The State had to prove that Mark

---

[5] Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime.

McGuire intended to kill his daughter, and the evidence that Tori was a battered child was probative of causation and intent. I therefore join Part I of the Court's opinion.

I do not join Part II of the opinion because I think there is a reasonable likelihood that the jury misapplied the prior acts instruction. The trial court instructed the jury that evidence of Tori's prior injuries had been admitted to show that McGuire had committed offenses similar to that for which he was on trial, and that, if the jury found a "clear connection" between the prior offenses and the charged offense, "it may be logically concluded that if the Defendant committed other offenses, he also committed the crime charged in this case." App. 41. In my view, the instruction encouraged the jury to assume that McGuire had inflicted the prior injuries and then directed the jury to conclude that the prior abuser was the murderer. Because the instruction may have relieved the State of its burden of proving the identity of Tori's murderer beyond a reasonable doubt, I would hold that the instruction was error and remand to the Court of Appeals for a determination of whether that error was harmless.

The fact that a 6-month-old child was repeatedly beaten in the course of her short life is so horrifying that a trial court should take special care to inform the jury as to the significance of that evidence. As the Court notes, the demonstration of battered child syndrome is relevant because it "'indicates that a child found with [serious, repeated injuries] has not suffered those injuries by accidental means,'" *ante*, at 68 (quoting *People* v. *Jackson*, 18 Cal. App. 3d 504, 507; 95 Cal. Rptr. 919, 921 (1971)). I therefore agree that proof of Tori's battered child status, although "not linked by any direct evidence to McGuire," was properly admitted because "the evidence demonstrated that Tori's death was the result of an intentional act by *someone*, and not an accident." *Ante*, at 69. Precisely because the relevance of battered child syndrome is *not* tied to the identity of the abuser, however, I

believe that a jury instruction clarifying the limited proba-
tive value of that evidence was required.

Instead of an instruction limiting the use of evidence of
Tori's prior injuries, the trial judge gave an instruction limit-
ing the use of evidence of McGuire's prior bad acts. In so
doing, the trial judge himself appears to have assumed that
the prior injuries could be attributed to McGuire. The
judge told the jury that "[e]vidence has been introduced for
the purpose of showing that the Defendant committed acts
similar to those constituting a crime other than that for
which he is on trial." App. 40. The State concedes that
this category of evidence encompasses both the acts for
which McGuire was positively identified as the actor (carry-
ing the child by one arm and roughly pinching her cheeks)
and the far more brutal acts for which no actor was identified
(the fractured ribs and the rectal tearing). The grouping of
these two distinct classes of evidence created a reasonable
likelihood that the jury would believe that McGuire had been
identified—at least in the eyes of the trial judge—as the
prior abuser.

The trial court's error in implying that McGuire had been
identified as the prior abuser was compounded by its further
instruction that, if the jury found a "clear connection" be-
tween the prior offenses and the charged offense, "it may be
logically concluded that if the Defendant committed other
offenses, he also committed the crime charged in this case."
The Court finds it "likely" that the jury understood the in-
struction to mean that "*if* it found a 'clear connection' be-
tween the prior injuries and the instant injuries, and *if* it
found that McGuire had committed the prior injuries, then it
could use that fact in determining that McGuire committed
the crime charged." *Ante,* at 75. In my view, there is a
reasonable likelihood that the jury did not understand this
single sentence to establish a two-step process.

The jury was instructed to "consider" the evidence that
McGuire had "committed acts similar" to the crime charged

and to "determin[e]" whether there was a "clear connection" between these prior acts and the ones that resulted in Tori's death. App. 40, 41. The trial court did not instruct the jury that it must first "determine" whether McGuire had in fact inflicted the prior injuries. The part of the instruction relied upon by the Court—"it may be logically concluded that if the defendant committed other offenses, he also committed the crime charged in this case"—does not make clear that it is the jury's role to ascertain whether McGuire was the perpetrator of the prior abuse. Rather, coming as it does in the middle of what appears to be a conclusion of law, it is reasonably likely that the jury understood that such a determination had already been made and that its role was merely to determine if there was a "clear connection" between Tori's prior injuries and the injuries that killed her.

Although we "have defined the category of infractions that violate 'fundamental fairness' very narrowly," *Dowling* v. *United States*, 493 U. S. 342, 352 (1990), it is well established that the fundamental fairness guarantee of the Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the offense. *In re Winship*, 397 U. S. 358, 364 (1970); *McMillan* v. *Pennsylvania*, 477 U. S. 79, 85 (1986). This constitutional principle "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis* v. *Franklin*, 471 U. S. 307, 313 (1985); *Sandstrom* v. *Montana*, 442 U. S. 510 (1979). Thus, we have held that mandatory presumptions violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of the offense. *Patterson* v. *New York*, 432 U. S. 197, 215 (1977); *Sandstrom, supra,* at 520–524. By contrast, a permissive inference is not a violation

of due process because the State still has the burden of persuading the jury that the suggested conclusion should be inferred based on the predicate facts proved. *Ulster County Court* v. *Allen,* 442 U. S. 140, 157–163 (1979).

In this case, the instruction perhaps was intended to posit a permissive inference that whoever had inflicted Tori's prior injuries was likely to have inflicted the injuries that caused her death. But the trial court did not make clear that the State first had to prove the predicate facts from which the inference was to be drawn. Furthermore, the wording of the instruction is such that the jury may well have assumed that it had no choice but to "logically conclud[e]" that McGuire was the murderer once it found a "clear connection" between the prior injuries and the fatal ones.* Because I cannot say with any confidence that the instruction allowed a mere permissive inference drawing from proven facts, I think the instruction should be treated as a mandatory presumption that may have relieved the State of its burden of proving the identity of Tori's killer beyond a reasonable doubt.

Had the instruction been clearly worded, I would agree with the Court that there is sufficient circumstantial evidence in the record to support a finding that McGuire was the perpetrator of the prior injuries. After all, as the Court points out, "[t]he proof of battered child syndrome itself narrowed the group of possible perpetrators to McGuire and his wife, because they were the only two people regularly caring for Tori." *Ante,* at 74. In this case, however, it is important to remember that the other person regularly caring for Tori—Daisy McGuire—took the stand and testified, under a grant of immunity, that *she* was the one who inflicted the fatal injuries on the night of July 7, 1981.

---

*Although not dispositive, it is worth noting that California's model jury instructions on "evidence of other crimes" has since been revised to eliminate the phrase "so that it may be logically concluded." See 1 California Jury Instructions, Criminal 2.50 (5th ed. 1987).

McGuire's jury deliberated for three days before returning a verdict of guilty. Any evaluation of the jury instruction must be conducted against the background of Daisy McGuire's surprise testimony and the dilemma it so clearly posed for the jury. In my view, the jury instruction on similar acts was so "ambiguous," *ante,* at 72, that there was a reasonable likelihood that the jury was encouraged to make assumptions and conclusions about the identity of Tori's murderer that relieved the State of having to prove that element of the offense beyond a reasonable doubt. In cases where the Court has found that jury instructions included mandatory presumptions inconsistent with the guarantees of the Due Process Clause, the Court has remanded to determine whether the erroneous instruction was harmless, which is the course that should be followed here. See, *e. g., Sandstrom, supra,* at 526–527; *Rose* v. *Clark,* 478 U. S. 570, 584 (1986); *Carella* v. *California,* 491 U. S. 263, 266–267 (1989) *(per curiam).*