5 F.3d 540
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 O'Neal UNDERWOOD, Plaintiff-Appellee,
v.
Robert G. BORG, Warden, Defendant-Appellant.
 No. 92-16725.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1993.*
Decided Aug. 27, 1993.
 
 Appeal from the United States District Court for the Northern District of California; No. CV-90-03353-MHP, Marilyn H. Patel, District Judge, Presiding.
 N.D.Cal.
 AFFIRMED.
 Before WALLACE, Chief Judge, and D.W. NELSON and O'SCANNLAIN, Circuit Judges.
 
 ORDER
 
 1
 Borg appeals from the district court's issuance of a writ of habeas corpus based upon acknowledged Beeman error. The district court exercised jurisdiction under 28 U.S.C. Sec. 2254. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. Sec. 2253. For the reasons stated in the district court's September 23 and October 28, 1992, orders, we conclude that the erroneous jury instruction "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993), quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946).
 
 
 2
 AFFIRMED.
 
 O'SCANNLAIN, Circuit Judge, dissenting:
 
 3
 Underwood was convicted in a California court of aiding and abetting murder. The trial court properly instructed the jury on the definition of aiding and abetting, and the jury retired. The jurors were not permitted to take notes while the instructions were given; the court permitted the jury a tape recording of its instructions, but did not allow the jurors a written transcript.
 
 The court instructed the jury as follows:
 
 4
 A person who aids and abets the commission of a crime need not be personally present at the scene of the crime. Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.
 
 
 5
 Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.
 
 
 6
 Further, mere presence at the scene and mere knowledge that a crime is being committed, taken together and in combination, do not amount to aiding and abetting.
 
 
 7
 The jury subsequently asked for clarification as to the definition of a "principal." Despite the specificity of the jury's request, the court responded by having its oral instructions defining "principal" and "aiding and abetting" typed up for the jury. Unfortunately, an error was made by the typist: the words "do not" were omitted from the final paragraph of those instructions. As a result, the supplemental written instruction told the jury that: "Further, mere presence at the scene and mere knowledge that a crime is being committed taken together and in combination [ ] amount to aiding and abetting." There is no question that this is an erroneous instruction; the only question is whether the error was harmless. I believe that it was, and I therefore respectfully dissent.
 
 
 8
 * Under the Supreme Court's decision in Brecht v. Abrahamson, 113 S.Ct. 1710 (1993), an error must be deemed harmless on habeas unless that error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Id. at 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The burden of proof in this regard is on the habeas petitioner. Id. See Castillo v. Stainer, No. 91-16146, slip op. 7199, 7200 (9th Cir. July 9, 1993) (order amending opinion).
 
 
 9
 Further, the Court tells us that, when a habeas petitioner seeks the grant of the writ because of an erroneous jury instruction,
 
 
 10
 [t]he only question ... is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.... It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.
 
 
 11
 Estelle v. McGuire, 112 S.Ct. 475, 482 (1991) (citations and quotation marks omitted, emphasis supplied). Thus, the real question here is whether it is "reasonably likely" that the jury applied the erroneous portion of the written instruction on aiding and abetting in a manner that "had substantial and injurious effect or influence in determining the jury's verdict." Stated differently, the question is whether there is a reasonable likelihood that the jury applied the instruction according to its literal terms such that, upon finding that Underwood was present at the scene of the murder, and that he knew a crime was being committed, they found him guilty of the crime of aiding and abetting murder. If so, Underwood was entitled to habeas relief.
 
 II
 
 12
 The majority affirms the grant of the writ "[f]or the reasons stated in the district court's ... orders." I believe the district court was in error.
 
 
 13
 The district court stated that "there is absolutely nothing 'ambiguous' about the erroneous instruction.... A reasonable juror could not have read it to state anything other than what it says...." Order of Oct. 28, 1992 at 6. With respect, I disagree. Viewing the erroneous instruction not "in artificial isolation," but rather in its proper "context," we find that the jury was told (1) that "mere presence" is not aiding and abetting, (2) that "mere knowledge" is not aiding and abetting, and (3) "further," mere presence plus mere knowledge is aiding and abetting. That is not proper English usage. If the court had intended to tell the jury that mere presence plus mere knowledge is aiding and abetting, then it would have introduced that statement with an adversitive of some sort: "however," "but," or a similar word acknowledging the contrast between the conclusion and what had come before. The result is an ambiguity concerning the real import of the supplemental written instruction.
 
 
 14
 Not only do I believe that reasonable jurors could have read this instruction to mean something other than what it seemed to say, I think that these jurors, if they considered it at all, did exactly that.[1] First, I think that someone in the jury room must have recognized that the use of the word "further" in the written version of the instructions made no sense. Second, I think that someone in the jury room must have recognized that the written instruction was at odds with the (correct) oral charge the judge had already delivered.
 
 
 15
 Third, I think that someone in the jury room must have been troubled by the fact that the erroneous instruction was antithetical to everything they had heard and seen in a five-day jury trial. For Underwood conceded at trial that he was present at the scene of the murder and that he knew a crime was being committed. He defended himself by testifying that he had tried to dissuade his associate, Williams, from robbing the victim, that he had tried to wrestle the knife from Williams' hand, and that he was found in possession of the victim's wallet only because Williams had given it to him afterwards in an effort to buy his silence. The entire trial was focused not on the question of whether Underwood was present and aware of what was going on, but whether he had acted with the intent to encourage or facilitate Williams' unlawful purpose. Taken at face value, the erroneous supplemental instruction told the jurors they had no choice but to convict Underwood. That must have struck them as curious.
 
 
 16
 I think reasonable jurors would have recognized that the instruction could not possibly have meant what it literally said. To conclude otherwise is to presume a remarkably low threshold of juror competence.
 
 III
 
 17
 I further believe that the district court erred in assigning the burden of proof to the State to prove that there was not a "reasonable likelihood" that the instruction violated Underwood's rights. See Order of October 28, 1992 ("Respondent's argument that there is no "reasonable likelihood" that the jury could have applied the challenged instruction in a constitutionally infirm manner is therefore completely lacking in merit."). The burden here, pursuant to Brecht, properly belongs to Underwood. I do not believe he has met his burden.
 
 IV
 
 18
 In sum, I do not think Underwood has proved a "reasonable likelihood" that the jury applied the erroneous supplemental instruction in a manner that "had substantial and injurious effect or influence in determining the jury's verdict." I would therefore reverse the district court's grant of the writ.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 [1]
 The jury specifically requested reinstruction on the definition of a "principal" under the law--there was no request for clarification as to the definition of an "aider and abettor." The trial judge, in its discretion, decided to provide written instructions on both definitions together. The jury's request thus does not indicate to me that they were focused specifically on the elements of aiding and abetting. I therefore question whether it is "reasonably likely" they considered the erroneous portion of the supplemental instruction at all