John E. DANNENBERG, Petitioner–Appellant,

v.

George INGLE, Respondent–Appellee.

No. 00–16048.

D.C. No. CV–92–20211–JW.

United States Court of Appeals, Ninth Circuit.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Submitted Sept. 10, 2001.*

Decided Sept. 20, 2001.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before HUG, PREGERSON, and WARDLAW, Circuit Judges.

MEMORANDUM **

John E. Dannenberg appeals pro se the district court's denial of his 28 U.S.C. § 2254 habeas petition challenging his jury conviction for second-degree murder. We have jurisdiction pursuant to 28 U.S.C. § 2253(a).[1]

We review the district court's denial of a section 2254 petition. *Duckett v. Godinez,* 67 F.3d 734, 739 (9th Cir.1995). Dannenberg raises numerous due process claims alleging trial error, along with claims of prosecutorial misconduct and insufficiency of the evidence. We affirm for the following reasons.

1. Because Dannenberg filed his habeas petition and his notice of appeal before the enactment of the Anti-terrorism and Effective

1. *Evidentiary Challenges*

■ Dannenberg first contends that his due process rights were violated when the trial court prevented two defense experts from testifying as to their opinion of his "actual ... mental state at the time of the alleged murder." To the extent this contention is cognizable under federal habeas, *see Jammal v. Van de Kamp,* 926 F.2d 918, 919–20 (9th Cir.1991), the district court properly denied this claim because due process is not violated by the exclusion of such testimony. *See* Cal.Penal Code § 29 (prohibiting expert testimony as to whether a defendant possessed the required mental state); *see also United States v. Morales,* 108 F.3d 1031, 1038 (9th Cir.1997) (en banc) (discussing that under Federal Rule of Evidence 704(b), no expert witness may state an opinion or inference as to whether a defendant did or did not possess the requisite mental state).

■ Dannenberg next contends that the admission of fingerprint evidence and testimony regarding blood diffusion experiments violated his due process rights. Dannenberg's contention, however, fails because he has failed to demonstrate how any errors related to the admission of such evidence prejudiced him, in light of the other evidence presented and given Dannenberg's opportunity to challenge the weight of the evidence through argument. *See Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (establishing that trial errors must have had a "substantial and injurious effect or influence in determining the jury's verdict"); *Laboa v. Calderon,* 224 F.3d 972,

Death Penalty Act of 1996 ("AEDPA"), we apply pre-AEDPA law to this appeal. *See Lindh v. Murphy,* 521 U.S. 320, 323, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Cooper v. Calderon,* 255 F.3d 1104, 1114 (applying pre-AEDPA habeas law under 28 U.S.C. § 2254(d)).

977 (9th Cir.2000) (deciding that the admission of an accomplice's confession was harmless because the defendant failed to show actual prejudice).

### 2. Jury Instructions

█ Dannenberg next contends that his due process rights were violated because the trial court failed to *sua sponte* instruct the jury that it must reach a unanimous verdict on one of the two theories of second-degree murder in California, express malice or implied malice. We conclude that the jurors could have found either express or implied malice as satisfying the *mens rea* requirement for second-degree murder. *See Schad v. Arizona*, 501 U.S. 624, 643–44, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (deciding that the jury does not have to agree on the exact mental state where two different mental states satisfy the *mens rea* element of a single offense); *see also* Cal.Penal Code § 188 (West 1988) (defining malice requirement for murder as either express or implied).[2]

Dannenberg next raises several contentions with respect to whether his due process rights were violated because the jury was not properly informed that it must find he had the subjective awareness that his actions involved a high probability of death in order to convict him of implied malice second-degree murder. Our review of the jury instructions leads us to conclude that they did not render the trial fundamentally unfair. *See Brecht*, 507 U.S. at 637; *cf.* *People v. Blakeley*, 23 Cal.4th 82, 96 Cal.Rptr.2d 451, 999 P.2d 675, 680–81 (Cal.2000) (establishing that a defendant, who intentionally kills or acts with conscious disregard for life, kills with the unreasonable belief in the need for self-defense, is guilty of voluntary manslaughter).

Dannenberg further contends that his due process rights were violated because the trial court failed to give the jury a specific instruction regarding the requirement to have a concurrence of the act and mental state for each offense. We conclude there was no due process violation because the jury instructions, taken as a whole, adequately advised the jury that it must find a concurrence of the *actus reas* and the *mens mea* for each crime charged. *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (stating that jury instructions, viewed in whole, are reviewed for whether they so infected the trial as to render the whole proceeding unfair).

█ Dannenberg next contends that the trial court erred by instructing the jury that it must deliver a vote of acquittal or guilt on the greater offenses before issuing a vote on the lesser offenses. We conclude that instruction neither violated any of Dannenberg's constitutional rights nor so infected the trial because: (1) the trial

---

**2.** As a related contention, Dannenberg argues that at trial the prosecution "ambushed" him by changing its theory of murder, from express malice to implied malice, in violation of his right to be placed on notice of the charges against him. Because Dannenberg (1) knew in advance that the jury would be instructed on all homicide theories, (2) his theory of self-defense was still applicable, and (3) he does not state how his testimony would have been different, we conclude that he received adequate notice of the implied malice theory of murder. *See Morrison v. Estelle*, 981 F.2d 425, 428–29 (9th Cir.1992) (concluding that defendant received adequate notice of felony-murder charge where prosecution requested such instructions at initial conference and presented evidence supporting the theory even where the indictment did not list felony-murder as a charge); *see also Sheppard v. Rees*, 909 F.2d 1234, 1236 n. 2 (9th Cir.1989) (deciding that constitutionally adequate notice of a felony-murder charge could be provided to a defendant by means other than the charging document).

court sufficiently charged the jury that they could consider and discuss freely other, lesser-included offenses "in any sequence"; (2) the trial court clearly explained to the jury that this restriction applied only to how they ultimately, formally voted; (3) the jury acquitted him of the most serious charge, first-degree murder; and (4) the jury was instructed that in order to convict Dannenberg of murder, it had to find that the prosecution proved beyond a reasonable doubt that the killing was not done in the heat of passion, upon a sudden quarrel or in unreasonable self-defense. *See People v. Kurtzman,* 46 Cal.3d 322, 250 Cal.Rptr. 244, 758 P.2d 572, 581 (Cal.1988) (holding harmless the trial court's erroneous instruction that the jury must unanimously agree on whether defendant was guilty of second-degree murder before considering voluntary manslaughter, where jurors in fact deliberated on lesser charges before and after court's the court's comment); *see also Estelle,* 502 U.S. at 72.

### 3. *Prosecutorial Misconduct*

■ Dannenberg next raises several claims of prosecutorial misconduct, which he contends rendered his trial fundamentally unfair, depriving him of due process. We conclude that Dannenberg's rights were not violated, because: (1) the alleged instances of "vouching" by the prosecutor constituted mere argument inviting the jury to draw an inference from the evidence and did not improperly influence the jury, *see United States v. Laurins,* 857 F.2d 529, 539–40 (9th Cir.1988); (2) Dannenberg has failed to show that the prosecutor's alleged misstatements of law and evidence prejudiced him, in light of the substantial evidence against him and the trial court's proper instructions to the jury, *see United States v. Lopez–Alvarez,* 970 F.2d 583, 597 (9th Cir.1992); and (3) the prosecutor's isolated statement regarding Dannenberg's wealth does not warrant reversal of his conviction, *see United States v. McWilliams,* 730 F.2d 1218, 1222 (9th Cir.1984) (per curiam) (holding that, if the misconduct complained of was "isolated and was not inflammatory," then reversal is not warranted).

### 4. *Sufficiency of the Evidence*

■ Dannenberg further contends that there was insufficient evidence to support a conviction for second degree murder because he was not subjectively aware of the risk which his actions created, an element of implied malice murder. Viewing the evidence in the light most favorable to the prosecution, a reasonable juror could have found implied malice to be proven beyond a reasonable doubt, based on evidence that Dannenberg struck his wife in the head several times with a pipe wrench, breaking her nose and eye socket. *See Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (establishing the standard for sufficiency of evidence on habeas review); *see also People v. Bohana,* 84 Cal.App.4th 360, 100 Cal.Rptr.2d 845, 850 (Cal.Ct.App.2000) (stating that under an implied malice theory of murder, it is not necessary to establish that the defendant intended that his act would result in the death of a human being).

### 5. *Ineffective Assistance of Counsel*

Dannenberg further contends that his appellate counsel was ineffective because he failed to raise several of the foregoing claims on direct appeal, and that such failure was cause for procedural default. We conclude that any failure by Dannenberg's appellate counsel to raise any issues on direct appeal does not constitute ineffective assistance of counsel. *See Poland v. Stewart,* 169 F.3d 573, 577 (9th Cir.), *cert. denied,* 528 U.S. 845, 120 S.Ct. 117, 145 L.Ed.2d 99 (1999) (holding that ineffective

assistance of counsel constitutes cause for procedural default only if counsel's performance was constitutionally ineffective).

Because Dannenberg's constitutional rights were not violated by any of the foregoing alleged errors, either individually or cumulatively, the district court properly denied his habeas petition. *See* 28 U.S.C. § 2254(d) (1995); *cf. Duckett,* 67 F.3d at 750 (affirming in part the district court's rejection of his habeas claims).

AFFIRMED.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.