**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0187n.06

No. 11-2341

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 20, 2013**
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| GEORGE GERARD BURGER, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| JEFFREY WOODS, | ) EASTERN DISTRICT OF MICHIGAN |
| | ) |
| Respondent-Appellee. | ) |

Before: BOGGS, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. A Michigan jury convicted George Burger of armed robbery and fleeing from the police. The state courts affirmed his convictions, and a federal district court denied his habeas petition. We affirm.

I.

On Easter Sunday in 2003, Steven Goble was working the graveyard shift at a Mobil gas station in Highland, Michigan. Around 4:00 a.m., a middle-aged white man wearing a stocking hat came in and told Goble, "This is a stick-up." R. 6-6 at 138. Goble thought the man was joking until the man pulled out a knife and tapped it against the counter. Goble gave the man all the money in the cash register, and the man left. Goble called the police and gave a description of the man and his pick-up truck.

Oakland County Sheriff's Deputy Steven Dooley responded to the call. A few minutes later, he saw a pick-up truck on a nearby road that matched the description of the truck connected to the

robbery. Dooley stopped the vehicle and asked its driver, Burger, to exit. When Dooley asked Burger whether he had been near the Mobil station, Burger jumped back into the truck, said "I'm out of here," and sped away. R. 6-10 at 73.

Dooley pursued. After a few miles, Burger pulled off the road, stopped, and fled on foot into a forest. When other officers reached the scene, they found a knife and a crack-cocaine pipe inside Burger's truck. A few days later, police found Burger in an apartment in Farmington, Michigan, and arrested him.

At trial, Goble testified that Burger looked like the man who had robbed him, although he could not be sure. Goble also told the jury that the knife from Burger's truck "looks a lot like" the one the robber used, although again he could not be sure. R. 6-6 at 144. Officer Dooley testified about his encounter with Burger the night of the robbery. And Balani Kandaswamy testified that in December 1996, Burger robbed his Shell station in Farmington. (Burger pleaded guilty to armed robbery and spent five-and-a-half years in prison for that offense.) In the earlier robbery, Burger said, "This is a stick-up," while wearing a hooded sweatshirt and keeping one hand in his pocket as if he had a gun. R. 6-7 at 244. The defense objected to this testimony, but the trial court ruled it admissible as evidence of a distinctive characteristic because "this is a stick-up" is an "archaic" choice of words. R. 6-5 at 18.

The jury convicted Burger of armed robbery and fleeing from the police, and the Michigan courts affirmed his convictions. *See People v. Burger*, No. 251788, 2005 WL 624277 (Mich. Ct. App. Mar. 17, 2005); *People v. Burger*, 707 N.W.2d 194 (Mich. 2005). Back in the state trial court,

Burger filed a motion for relief from judgment. The trial court denied it, and the court of appeals

denied him leave to appeal. Burger filed a federal habeas petition, which the district court denied.

II.

Burger argues that the state courts violated his due process rights by admitting testimony

about the 1996 robbery. Were we being asked to decide whether the Michigan courts properly

applied Michigan evidence law, there might be something to this argument. Rule 404(b)(1) of the

Michigan Rules of Evidence, much like its federal counterpart, prohibits propensity

evidence—"[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order

to show action in conformity therewith." And the testimony about the 1996 robbery at first glance

looks like a textbook example of evidence that might lead a jury to find that, because the defendant

robbed a gas station once before, he likely did so again. Even the exception to the rule—for other-

crimes evidence "marked with special characteristics so uncommon, peculiar and distinctive as to

lead compellingly to the conclusion that all were the handiwork of the defendant because all bore

his distinctive style or 'touch,'" *People v. Golochowicz*, 319 N.W.2d 518, 528 (Mich. 1982)—seems

out of place. What the state courts thought was Burger's trademark move—telling a gas station

attendant "this is a stick-up"—is exceedingly generic, even cliché. While the state courts thought

the threat was so "archaic" as to be distinct, a Westlaw search suggests that is not the case. *See* R. 12

at 14 (district court opinion describing a Westlaw search that uncovered 1,215 other cases in which

a robber said "this is a stick-up"). And it does not seem surprising or for that matter a signature

feature of a crime for a tentative fly-by-night robber (remember he has been caught twice, and this

attendant did not take him seriously at first) to invoke an old stand-by—"this is a stick-up"—in the throes of trying to pull off a robbery.

Unfortunately for Burger, second-guessing evidentiary rulings is not our job, at least not in this context. Federal habeas courts do not review state-court rulings on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). We may grant relief only if a state court's evidentiary ruling "is so egregious that it results in a denial of fundamental fairness," thereby violating the Fourteenth Amendment's due process guarantee. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Making matters worse, at least temporarily, Burger did not press a due process argument during his direct appeal in the state courts, focusing almost exclusively on the merits of the state law evidentiary ruling. For that reason, the state appellate court held that Burger forfeited the federal claim. *Burger*, 2005 WL 624277, at *2 n.2. Ordinarily, that forfeiture would create a procedural bar in a later federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But a State may forfeit a forfeiture. *Trest v. Cain*, 522 U.S. 87, 89 (1997). Although the State purports to preserve the procedural-bar argument in a single sentence of its appellate brief (and, below it all, in a footnote no less), Woods Br. at 15 n.1, that kind of undeveloped, bare-bones assertion does not suffice to make, much less preserve, an appellate argument. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006).

As for the merits, the State invokes the Antiterrorism and Effective Death Penalty Act, *see* 28 U.S.C. § 2254(d), claiming that its deferential standard of review applies to Burger's claims. That may or may not be true. On the one hand, the Michigan courts did not issue a merits ruling on the

point on direct review, as they found the due process argument forfeited, suggesting that AEDPA does not apply. On the other hand, on postconviction review, Burger did make the argument, and the Michigan Court of Appeals issued a summary decision denying Burger leave to appeal his postconviction motion for relief from judgment. In some settings, that kind of decision might amount to a ruling on the merits for AEDPA purposes. *Cf. Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (holding that a denial of leave to file a delayed direct appeal was a decision on the merits). We need not resolve the point because the standard of review makes no difference to the outcome. Burger's due process claim fails either way.

A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb. The kind of foundational unfairness and arbitrariness needed to show that a flawed state court evidentiary ruling rises to the level of a due process violation is not a broad category, and the Supreme Court to our knowledge (and Burger's) has never identified an improper-character-evidence case that falls into it. In *Dowling v. United States*, 493 U.S. 342, 352–53 (1990), the Court, on direct review, held that a trial court did not violate a defendant's due process right when it allowed the prosecution to submit evidence that the defendant had previously been tried on robbery charges. The Court came to a similar conclusion in a pre-AEDPA habeas case. In *Estelle v. McGuire*, the Court held that a defendant did not suffer a due process violation when a state court admitted evidence and that state evidentiary questions form "no part of a federal court's habeas review of a state conviction." 502 U.S. at 67; *see also Spencer v. Texas*, 385 U.S. 554, 564 (1967) ("[I]t has never been thought that . . . this Court [was] a rule-making organ for the promulgation of state rules of criminal procedure.").

It may well be that the trial court misapplied Michigan Evidence Rule 404(b). But this kind of "garden-variety" character-evidence error does not "cross the constitutional threshold" of due process. *Watkins v. Meloy*, 95 F.3d 4, 7 (7th Cir. 1996). Indeed, our court has rejected many similar claims both before and after the passage of AEDPA. *See, e.g.*, *Sanborn v. Parker*, 629 F.3d 554, 576 (6th Cir. 2010) (finding no constitutional violation when a state trial court admitted a defendant's confession to a minister); *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007) (holding that a defendant's "disagreement" with state-court rulings on the admissibility of character evidence was "not cognizable on federal habeas review"); *Clemmons v. Sowders*, 34 F.3d 352, 358 (6th Cir. 1994) (stating that a habeas petitioner's claim that his trial court erroneously admitted evidence of his past convictions "raises no constitutional infirmity"); *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982) ("The evidentiary ruling of the state trial court judge in the present case does not give rise to a constitutional violation.").

That brings us to the second problem with this contention. Even if we assumed for the sake of argument that the mistaken admission of other-acts evidence could violate a defendant's right to due process, though Burger has pointed us to no such case, the improper evidence would need to be "material in the sense of a crucial, critical highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000). The alleged similarity between Burger's 1996 robbery conviction and the 2003 robbery, however, was just one brick in the wall of evidence against him. Deputy Dooley stopped Burger near the scene of the robbery in a truck that matched the gas-station attendant's description. And the robbery took place at 4:00 a.m. on Easter Sunday, not a time when many vehicles are on the road. As soon as Dooley brought up the robbery, Burger fled, and the police later found a knife in

his truck. Goble, the gas-station attendant, testified that the robber looked like Burger and used a knife that looked like the one police found.

Even Burger's efforts to poke holes in some, but not all, of this evidence faced problems. Goble, it was true, was not certain that Burger was the man who robbed the station, and Goble had failed to pick Burger out of lineups before trial. But Burger had shaved his beard after he was arrested, and the photo of Burger in one of the pretrial lineups was six years old. On this record, any uncertainties in Goble's testimony were understandable and hardly sufficed to sink the government's case. As for the 1996 robbery, the trial court may have erred in admitting it, but the court did not err in instructing the jury about its limited relevance. It instructed the jury that it could consider evidence of the 1996 robbery only to find that Burger "used a plan, system or characteristic scheme that he's used before or since," and that it "must not consider this evidence for any other purpose," including whether Burger "is a bad person or that he's likely to commit crimes." R. 6-7 at 347–48. In the face of this instruction and the other evidence against Burger, the 1996 robbery was in no way the linchpin to the government's case—a "crucial" or "critical" factor in Burger's conviction. *Cf. Brown*, 227 F.3d at 645 (finding no constitutional violation in spite of a state-court evidentiary error when there was ample evidence to convict the defendant). Right or wrong, the state court's other-acts evidentiary ruling does not supply a basis for federal habeas relief premised on the Due Process Clause of the Fourteenth Amendment.

Burger's claim of ineffective assistance of appellate counsel fails to take flight for similar reasons. To prove ineffective assistance, Burger must show that his lawyer performed poorly and that the deficient representation prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  In his brief to the Michigan Court of Appeals, Burger's lawyer argued that the trial court's decision to admit evidence of the 1996 robbery was erroneous under Michigan evidence law, but he made only a perfunctory argument that the trial court's ruling was a violation of due process.  *See Burger*, 2005 WL 624277, at *2 n.2.  As a result and as noted above, the state appeals court found that Burger had forfeited the due process claim.  *Id.*  That forfeiture did not, however, prejudice Burger.  For the reasons just given, Burger could not have prevailed on his due process claim under federal law, and he has not identified any (unmentioned) Michigan cases that would have granted him relief on any state-law claims.  An appellate lawyer "cannot be found to be ineffective for failure to raise an issue that lacks merit."  *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).  Burger's lawyer is no exception, requiring us to deny this claim as well.

III.

For these reasons, we affirm.