**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0152n.06

**Case No. 14-1992**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BARTOLO FITCHETT, | ) | **FILED** |
| | ) | Mar 17, 2016 |
| *Petitioner-Appellant*, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MITCH PERRY, Warden, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| *Respondent-Appellee*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; SUHRHEINRICH and ROGERS, Circuit Judges.

COLE, Chief Judge.   Petitioner-Appellant Bartolo Fitchett was convicted in Michigan state court on assault and firearms charges for shooting his long-time acquaintance, Edward Esparza.  Fitchett argues his trial counsel was ineffective for failing to investigate and call two witnesses who Fitchett claims could corroborate his version of the altercation and exonerate him. The district court denied relief under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") because the state court did not unreasonably apply clearly established federal law in rejecting Fitchett's ineffective assistance of trial counsel claim.  For the same reasons, we affirm.

## I.    BACKGROUND

### A.  Factual Background

Fitchett and the victim, Edward Esparza, tell very different versions of what occurred on September 22, 2006.  *See Fitchett v. Perry*, No. 2:11-cv-13358, 2014 WL 3555970, *1−2 (E.D. Mich. July 11, 2014) ("Dist. Ct. Op.").

According to Esparza and Jacob Gorsuch, Esparza's co-worker, they were walking to a store after work when Fitchett drove up to them, got out of his truck, and confronted Esparza on the street, complaining that Esparza talked about Fitchett behind his back.  After the verbal exchange, Fitchett went to his truck and returned with a pistol.  Esparza "heard a bullet; his ears rang; and he was dazed." *Id*. at 1.  Fitchett then threatened, "next time I'll kill you," and drove off. *Id.*  Gorsuch looked over Esparza and announced Esparza was hit.  Then, they walked to a friend's house and someone called the police.  The two investigating officers agreed that Esparza's shoulder injury was consistent with a bullet grazing his shoulder.  Gorsuch accompanied an officer to the scene of the shooting where a .25 caliber shell casing was tagged as evidence.  That officer also thought some of the holes in Esparza's coat were consistent with a fired bullet.  The officers did not collect Esparza's coat as evidence at the time of the crime, but Esparza testified at trial that he still had the coat "in substantially the same condition as it was after he was shot," which he showed to the jury. *Id.* at *3.

According to Fitchett, he was driving when Esparza approached his truck.  Fitchett got out of the truck and Esparza asked him for $20.  The two argued and Esparza threatened Fitchett with a screwdriver.  Fitchett grabbed a cane from his truck, Esparza nicked Fitchett with the screwdriver, and Fitchett hit Esparza twice with the cane, then drove off.  Fitchett claims Esparza and Gorsuch lied about Fitchett having a gun and the shooting.

## B.  Procedural History

Fitchett was charged with assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f; carrying a firearm with unlawful intent, Mich. Comp. Laws § 750.226; and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Fitchett was convicted on all counts and, after an initial appeal, sentenced to two years' imprisonment on each of the two felony firearm possession charges, to run concurrently, and an additional 9.5 to 20 years for the remaining charges.  *People v. Fitchett*, No. 277063, 2008 WL 4228354, at \*1 (Mich. Ct. App. Sept. 16, 2008), *resentenced by People v. Fitchett*, No. 06-028169-FH (Mich. Cir. Ct. Saginaw Cnty. Dec. 12, 2008).  The Michigan Supreme Court denied leave to appeal.  *People v. Fitchett*, 759 N.W.2d 381 (Mich. 2009) (table).

In state post-conviction proceedings, the Michigan trial court denied Fitchett relief from the judgment and the appellate courts denied leave to appeal.  *People v. Fitchett*, No. 06-28169-FH (Mich. Cir. Ct. Saginaw Cnty. Jan. 5, 2010) (ECF No. 8-14) ("Mich. Order" or "state court decision"), *leave to appeal denied, People v. Fitchett*, No. 297662 (Mich. Ct. App. Aug. 3, 2010), *leave to appeal denied, People v. Fitchett*, 795 N.W.2d 139 (Mich. 2011) (table).  In 2011, Fitchett petitioned for a writ of habeas corpus under AEDPA in the Eastern District of Michigan.  The district court denied relief on all of his claims, Dist. Ct. Op. at \*5−15, but granted a certificate of appealability ("COA") on Fitchett's ineffective assistance of trial counsel claim as it related to counsel's failure to investigate and call two witnesses, *Fitchett v. Perry*, No. 2:11-cv-13358 (E.D. Mich. July 11, 2014).  We declined to expand the COA.  *Fitchett v. Perry*, No. 14-1992 (6th Cir. Jan. 23, 2015) (per curiam).

## II.    ANALYSIS

### A.  Standard of Review

We review a district court's denial of a writ of habeas corpus de novo.  *O'Neal v. Bagley*, 743 F.3d 1010, 1014 (6th Cir. 2013).  We may not grant habeas relief on a "claim that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1);[1] *see Harrington v. Richter*, 562 U.S. 86, 100 (2011); *O'Neal*, 743 F.3d at 1014−15.  When a state court has issued a decision on the merits of an ineffective assistance of counsel claim, AEDPA requires us to apply a "doubly deferential standard of review"—that is deference to the state court's decision, which gives deference to counsel's performance.  *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Harrington*, 562 U.S. at 101 (citation omitted).  Federal habeas relief is precluded so long as "fairminded jurists could disagree" on the correctness of the state court's decision.  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Here, because the Michigan appellate and supreme courts denied review, the last reasoned opinion was issued by the Michigan trial court on January 5, 2010.  *See* Mich. Order.

### B.  Ineffective Assistance of Trial Counsel Claim

Fitchett argues his trial counsel was ineffective for failing to investigate and call two witnesses, Josie Dawkin and Santana Oviedo, who Fitchett claims could corroborate his version of the facts.  Under "clearly established Federal law, as determined by the Supreme Court of the

---

[1] Fitchett does not rely on 28 U.S.C. § 2254(d)(2), which permits a federal court to grant habeas relief when a state court's decision on the merits is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

United States," to succeed on a claim of ineffective assistance of counsel, a petitioner must show both that (1) counsel provided deficient assistance falling below an objective standard of reasonableness and (2) the defendant was prejudiced as a result. *Harrington*, 562 U.S. at 104; *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Neal*, 743 F.3d at 1019. Fitchett's claims fail both requirements.

### 1. Deficient Performance

To satisfy the first prong of *Strickland*'s test, counsel's performance must be objectively unreasonable; that is "evaluat[ing] the conduct from counsel's perspective at the time," counsel must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 107, 104 (quoting *Strickland*, 466 U.S. at 689, 687). There is a "strong presumption" that counsel provided representation within the "wide range" of reasonable professional assistance. *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).

As an initial matter, we cannot conclude that Fitchett's counsel was deficient based solely on Fitchett's version. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt*, 134 S. Ct. at 17 (quoting *Strickland*, 466 U.S. at 689). Here, there is no indication of what defense counsel did with the information he received from Fitchett about the potential witnesses. Absent such evidence, *Strickland*'s deferential standard and AEDPA's doubly deferential standard require a finding that counsel's performance was not deficient. *See id.*; *Carter v. Mitchell*, 443 F.3d 517, 531 (6th Cir. 2006) (petitioner "provided no basis for a finding that trial counsel's investigation was unreasonable" where he did not introduce "any statement from trial counsel describing what [counsel] did or did not do in investigating [the petitioner's] background"); *Beuke v. Houk*, 537 F.3d 618, 644 (6th Cir. 2008)

(rejecting ineffective-assistance claim on habeas review where petitioner "ask[ed] this court to assume," based on "sheer speculation," that his trial counsel did not perform an adequate mitigation investigation and where petitioner failed to provide "enough evidence to confirm or deny that conclusion"). Even if such evidence did exist, counsel was not deficient in failing to investigate and call Dawkin and Oviedo.

### a. Failure to Call Josie Dawkin

Fitchett argues his counsel should have called his fiancée, Josie Dawkin, who treated Fitchett's alleged screwdriver injury after the altercation. In his state post-conviction petition, Fitchett alleged that Dawkin had background information relevant to the case.

> Josie Dawkin, had firsthand knowledge of the background between the alleged victim and the Defendant in this case. Her testimony could of cast a more favorable light on the defense's theories surrounding the actual events as they took place. Ms. Dawkin was the person that was present after the defendant and the alleged victim had previously had an altercation, she'd cleaned and dressed the wound of Bartolo Fitchett after being stabbed by the alleged victim.

Mot. for Relief from Judgment 25, ECF No. 8-13. The state court held that this was "totally vague and non-specific as to what [Dawkin's] testimony would have been. Since [Fitchett] has not adequately briefed this point, the Court treats it as abandoned." Mich. Order at *3. Accordingly, Fitchett procedurally defaulted this argument by failing to exhaust it in state court. *See* 28 U.S.C. § 2254(b)(1)(A).

Regardless, we may deny habeas relief notwithstanding Fitchett's failure to exhaust the claim in state court. *See* 28 U.S.C. § 2254(b)(2). Even assuming the stab wound to which Dawkin could testify was from the altercation at issue, and not the previous altercation she witnessed, Fitchett did not provide any evidence, such as an affidavit from Dawkin or himself, regarding the specific facts about which Dawkin could have testified. *See Landrum v. Mitchell*, 625 F.3d 905, 921 (6th Cir. 2010) (rejecting ineffective-assistance claim based on the failure to

call as a witness a third-party who confessed the crime to his girlfriend, where defendant provided no evidence that confession ever happened).

Further, Dawkin's testimony regarding a previous altercation between Fitchett and Esparza would have been irrelevant to the present altercation and potentially inadmissible. *See* Mich. R. Evid. 402 ("Evidence which is not relevant is not admissible."), 404(b)(1) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). And while evidence of a screwdriver injury could provide some corroboration for Fitchett's version of events, it would not necessarily *disprove* the prosecution's version of events involving a gun. Dawkin's testimony would be relevant if, *e.g.,* Fitchett argued he shot Esparza in self-defense after Esparza attacked him with a screwdriver. But Fitchett did not raise this theory at trial, nor does he raise it here. Instead, Fitchett argued that an entirely different set of events occurred.

Viewing the circumstances from counsel's perspective, Dawkin's potential testimony was likely irrelevant and inadmissible, thus warranting no further investigation. Fitchett's allegations are insufficient to rebut the presumption that trial counsel acted within the "wide range of reasonable professional assistance."

### b. *Failure to Call Santana Oviedo*

Fitchett also argues his trial counsel should have called Gorsuch's step-nephew, Santana Oviedo. The state court considered this claim on the merits and its decision is entitled to deference. *See* 28 U.S.C. § 2254(d)(1).

Oviedo provided an affidavit to trial counsel generally alleging that Gorsuch was "a bad person, known for lying, uses drugs, [and] has hurt family members." Mich. Order at *3. Though Fitchett also alleged Oviedo could testify that Gorsuch would "change his testimony if [Fitchett] would pay a certain bond so that Gorsuch could get out of jail," this allegation was not

mentioned in Oviedo's affidavit. *Id.* Fitchett argues Oviedo did not have to present everything to which he would testify in his affidavit. The state court declared that "[a]ny law student—much less a seasoned lawyer such as [Fitchett's] trial counsel—would have known instantly upon reading the Affidavit that Oviedo did not have admissible testimony to present." Mich. Order at *3; *see also* Mich. R. Evid. 801−806 (prohibiting hearsay testimony except under certain circumstances not present here), 608(a)(1) (prohibiting certain character evidence).

Whether evidence is admissible in a state trial is a question of state law. "[S]econd-guessing evidentiary rulings is not our job . . . Federal habeas courts do not review state-court rulings on state-law questions." *Burger v. Woods*, 515 F. App'x 507, 509 (6th Cir. 2013) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). To obtain relief on habeas, a state court's evidentiary ruling must be "so egregious that it results in a denial of fundamental fairness." *Id.* at 509 (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). Fitchett does not argue that the evidentiary findings were contrary to established federal law or an egregious violation of due process.

Even assuming Oviedo would testify as Fitchett claimed he would, he could not testify that Gorsuch was lying about this particular altercation because he was not there. Applying AEDPA's doubly deferential standard, we cannot say the state court unreasonably applied established federal law. *See Strickland*, 466 U.S. at 689. Viewing the circumstances from counsel's perspective, the state court found that Oviedo's potential testimony was irrelevant and inadmissible, thus warranting no further investigation. Fitchett's allegations are simply insufficient to rebut the presumption that trial counsel acted within the "wide range of reasonable professional assistance."

### c. Failure to Investigate Josie Dawkin and Santana Oviedo

Fitchett argues his counsel should have investigated the potential witnesses Josie Dawkin and Santana Oviedo. Though Fitchett raised this argument in state court, its decision only concluded that "Defendant fails to show that trial counsel was ineffective in failing to *present* the two potential witnesses he mentions." Mich. Order at *3 (emphasis added). While it is unclear whether the state court's ruling also applied to the failure to investigate, Fitchett's claim fails even on de novo review.

Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). The Supreme Court has held that counsel is not ineffective for failing to investigate if "further investigation would have been fruitless," *Wiggins v. Smith*, 539 U.S. 510, 525 (2003), because the additional evidence "would be of little help," *Strickland* 466 U.S. at 699, "can reasonably be expected to be only cumulative," *Bobby v. Van Hook*, 558 U.S. 4, 11 (2009), or carries "serious risks" of "expos[ing defendant's story] as an invention," *Harrington*, 562 U.S. at 108.

Here, Fitchett's counsel had "good reason to think further investigation [into the potential witnesses] would be a waste." *Rompilla,* 545 U.S. at 383; *see Strickland*, 466 U.S. at 699 ("Although counsel understandably felt hopeless about respondent's prospects . . . nothing in the record indicates . . . that counsel's sense of hopelessness distorted his professional judgment."). Fitchett does not allege that Dawkin or Oviedo were present during the altercation, could testify that Fitchett did not have a gun at the scene, or corroborate that Fitchett did not own a gun. At best, testimony from Dawkin and Oviedo would have been cumulative to the allegation that Fitchett was injured by a screwdriver and that Gorsuch was lying. But this was irrelevant to

whether Fitchett shot at Esparza and neither Dawkin nor Oviedo could have testified with respect to this key issue.

The cases that Fitchett cites in which we held otherwise are distinguishable because they involved counsel's failure to investigate witnesses who were with the defendant *at the time of the crime*. For example, in *McClellan v. Rapelje*, 703 F.3d 344, 347 (6th Cir. 2013), we held that defense counsel was deficient for failing to interview eight eyewitnesses who corroborated defendant's version of the facts. *See also Poindexter v. Booker*, 301 F. App'x 522, 529 (6th Cir. 2008) (counsel was deficient for failing to interview witnesses who were present at the time of the crime); *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007) (same); *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006) (same); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (counsel was deficient for failing to investigate alibi witness); *Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992) (same). By contrast, in *Jackson v. Warden*, 622 F. App'x 457, 463−65 (6th Cir. 2015), we held that counsel did not perform deficiently for failing to investigate witnesses when there was no evidence "there [were] any known eyewitnesses to the shooting that [petitioner's] trial counsel failed to interview" and all of the "witnesses identified and/or disclosed saw activity immediately before and after the shooting but none stated they saw the actual instant of the shooting." Here, neither Dawkin nor Oviedo were eyewitnesses or alibi witnesses. At best, Dawkin "saw activity immediately . . . after" the altercation, but not "the actual instant of the shooting." There is no allegation that Oviedo witnessed any part of the altercation or its aftermath.

The other cases Fitchett cites are equally unavailing because counsel in those cases failed to investigate evidence that could have exonerated the defendant. *See McClellan*, 703 F.3d at 347 (where defense theory was self-defense, counsel was deficient for failing to put forth any

evidence, including testimony by the defendant, that the victim charged at him with a gun); *Poindexter*, 301 F. App'x at 529 (trial counsel was deficient for failing to interview two witnesses who could corroborate that the defendant did not own guns); *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) (counsel was deficient for failing to investigate alternate causes of death, where evidence of those alternate causes was in the record); *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) (counsel was deficient for failing to call a witness he promised to call during his opening and had held nearby for that purpose); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (counsel was deficient for failing to interview witnesses who identified perpetrators other than the defendant). Here, there is no allegation that either Dawkin or Oviedo could corroborate that Fitchett did not own a gun or did not shoot Esparza. At best, Dawkin could have corroborated that Fitchett sustained an injury, but she could not testify that Fitchett was attacked first or even that Esparza attacked him. Further, Fitchett did not argue that he shot Esparza in self-defense, he argued that he did not shoot at all and that no gun was present.

* * *

Based on the foregoing, "fairminded jurists could disagree" with the state court's decision that Fitchett's trial counsel's performance was not deficient. Thus, the state court reasonably applied the first factor of *Strickland*.

### 2. *Prejudice*

To meet the second prong of *Strickland's* test, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome," but it is insufficient "to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at

693−94). Courts have routinely found no prejudice where there exists evidence other than that which the potential evidence would have contradicted and the defendant's proposed evidence would not directly refute the prosecution's. *See Harrington*, 562 U.S. at 112; *O'Neal*, 743 F.3d at 1020.

Because a *Strickland* claim requires a finding of *both* deficiency and prejudice, it was reasonable for the state court not to consider the prejudice factor of Fitchett's *Strickland* claim. But upon de novo review, even if Fitchett's counsel were deficient, Fitchett has not shown prejudice.

Fitchett argues that "[i]f two witnesses had corroborated Mr. Fitchett's account of the incident, it is reasonably likely that the jury might have believed Mr. Fitchett and found him innocent of the crimes charged." Fitchett Br. at 32. But Fitchett has not identified any witness who can corroborate his account of the altercation—Dawkin and Oviedo were not there. Even if Dawkin and Oviedo testified as Fitchett claims they would, they would not have contradicted the other evidence that helped to convict Fitchett. This evidence included the photographic evidence that Esparza was wearing the coat at the time of the shooting, that Esparza's injuries were consistent with a bullet grazing his shoulder, that Esparza had no injuries or bruises consistent with being hit forcefully by a cane, that the pattern of bullet holes in his coat were consistent with the prosecution's theory, that two eyewitnesses saw Fitchett with a gun, that an eyewitness identified Fitchett's gun as a .25 caliber pistol, and that an officer tagged a .25 caliber shell casing at the scene. Fitchett's argument also ignores that the prosecution presented three witnesses besides Esparza and Gorsuch—the two investigating officers and the 911 operator. Finally, Fitchett ignores that Dawkin's and Oviedo's testimony likely would have been inadmissible to begin with.

Fitchett has not shown a "reasonable probability that the outcome of the proceedings would have been different had his counsel introduced" the testimony of Dawkin or Oviedo. It seems clear that "the jury . . . was convinced by the Prosecution's theory, and not by [Fitchett's]. That was the jury's prerogative." Mich. Order at *3.

### III.    CONCLUSION

The state court's decision and the evidence of deficiency and prejudice here is such that "fairminded jurists could disagree," *Harrington*, 562 U.S. at 101, which is insufficient to grant AEDPA relief. Accordingly, we affirm the denial of the writ.

ROGERS, Circuit Judge, concurring.

Counsel's alleged failure to investigate or call Dawkin is troubling, and Dawkin's potential evidence is not easily dismissed as not worthy of counsel's investigation. A juror in a "he said/he said" case, hearing no evidence whatsoever corroborating one side's version, might readily find the other side's version to be beyond a reasonable doubt. But some corroboration could make all the difference. Dawkin's potential evidence, as described to the state court, could have provided some doubt-inducing corroboration of Fitchett's version of the two distinct stories. The argument was raised in the state court and in the district court, and if there was such evidence, it could have made a difference. Affirmance is warranted, however, because Fitchett has failed to present sufficient evidence that his counsel's performance was deficient and has not adequately presented an argument to us on appeal that the district court should have granted an evidentiary hearing.

At trial, Fitchett testified that Esparza attacked Fitchett with a screwdriver while Esparza and Gorsuch were attempting to rob Fitchett. R. 8-6 at PageID #212. Fitchett testified that Esparza and Gorsuch then fabricated the shooting in order to cover up their crime. *Id*. at PageID #213. Esparza and Gorsuch, in contrast, testified that Fitchett shot at Esparza without provocation. R. 8-5 at PageID #173–174, #180. The jury was therefore presented with two different versions of the events that occurred on September 22, 2006. Although Dawkin was not present during the altercation and therefore could not testify about whether Fitchett shot Esparza or about whether Esparza attacked Fitchett with a screwdriver, Dawkin could testify that she treated a wound that Fitchett sustained after the altercation occurred. Dawkin's testimony therefore would have corroborated Fitchett's account of the altercation and contradicted Esparza and Gorsuch's version of events.

Moreover, the jury's verdict lacked overwhelming record support. "A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland v. Washington*, 466 U.S. 668, 696 (1984). Although Fitchett was convicted of a number of firearm charges, the State did not introduce any evidence at trial that indicated that the State had recovered a firearm from Fitchett. Further, the officer who tagged the .25 caliber bullet shell casing that was discovered at the scene of the altercation as evidence did not determine whether the casing was warm or emitted a smell of exploded gunpowder. R. 8-5 at PageID #184, #186. The officer also was not aware if any other testing had been performed after the shell was tagged as evidence. *Id.* at PageID #186. The record therefore left open the possibility that the casing had been on the street for some time before the incident.

The record also did not definitively establish the identity of the person who first found the .25 caliber shell casing at the scene of the altercation. The officer who tagged the casing as evidence testified that she was the person who had first found the casing at the scene. *Id.* at PageID #185. However, Gorsuch, who acknowledged that he had previously owned a .25 caliber gun, also testified that he was the person who found the casing. *Id.* at PageID #182. The evidence thus left open the possibility that Gorsuch planted the casing at the scene.

The evidence also left open the possibility that Esparza's injury was caused by Fitchett's striking Esparza with a cane rather than by Fitchett's shooting Esparza with a gun. Esparza and Gorsuch testified that the bullet that caused Esparza's injury grazed his skin directly and made several holes in his coat. R. 8-5 at PageID #177, #181. Esparza also testified that although he was wearing a t-shirt under his coat, the bullet did not go through his t-shirt before exiting his coat. *Id.* at PageID #177. As the Michigan Court of Appeals noted, "Esparza's testimony that

the bullet that produced [his] grazing wound . . . did not damage the t-shirt he was wearing is []
difficult to reconcile with the damage to the jacket." *People v. Fitchett*, No. 277063, 2008 WL
4228354, at *2 (Mich. Ct. App. Sept. 16, 2008). Further, Fitchett did not agree with the State's
contention that Esparza's wound was inconsistent with being struck by a cane. R. 8-6 at PageID
#216. A jury could therefore conclude, consistent with the record, that Esparza's wound was
caused when Fitchett struck Esparza with a cane, not when Fitchett shot at Esparza with a gun.
Accordingly, given the weaknesses in the State's case, a jury could have believed Fitchett's
claim that he did not shoot Esparza if Dawkin had testified at trial.

The state court appears to have treated as procedurally defaulted Fitchett's claim
regarding evidence from Dawkin. The state court stated that Fitchett "suggest[ed] that [Dawkin]
had relevant testimony to present, but is totally vague and non-specific as to what that testimony
would have been." R. 8-14 at PageID #470. The state court therefore concluded that "[s]ince
[Fitchett] has not adequately briefed this point, the Court treats it as abandoned." *Id*. But
Fitchett did not procedurally default his claim that his counsel was ineffective for failing to
investigate or call Dawkin. Fitchett stated in his post-conviction brief to the state court that "Ms.
Dawkin was the person that was present after the defendant and the alleged victim had
previously had an altercation, she'd cleaned and the dressed the wound of Bartolo Fitchett after
being stabbed by the alleged victim." R. 8-13 at PageID #450. These assertions are not totally
vague and non-specific about what Dawkin's testimony would have been. Fitchett clearly stated
that Dawkin would have testified that she treated the wound that Esparza allegedly gave Fitchett
with a screwdriver.

Because the state court erroneously rejected Fitchett's claim as procedurally defaulted
(rather than denying the claim on the merits, as the State would read the state court's opinion),

we review the claim de novo. The claim fails not because evidence like that described above need not have been investigated or presented, but because there was not sufficient indication that such evidence existed. The Supreme Court has held "that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has also held that "[i]t should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt*, 134 S. Ct. at 17 (quoting *Strickland*, 466 U.S. at 689).

Fitchett did not meet his burden to overcome the presumption that his counsel provided reasonable professional assistance. Fitchett alleged in his state post-conviction petition that his counsel did not investigate or call Dawkin as a witness even though Fitchett told his counsel that Dawkin had treated a wound that Fitchett received after Esparza stabbed him. R. 8-13 at PageID #449–450. However, as stated in part II.B.1.a of the majority opinion, Fitchett submitted no affidavit from himself or Dawkin that substantiated Fitchett's claim that Dawkin could testify that she treated Fitchett's wound. Fitchett also did not submit an affidavit of his own detailing what he told his counsel about Dawkin. Further, as stated in part II.B.1 of the majority opinion, the record does not indicate what Fitchett's counsel did with the information that he allegedly received from Fitchett about Dawkin. Fitchett therefore has not provided support for his allegations that he told his counsel that Dawkin could testify that she treated Fitchett's wound, that Dawkin could actually testify as Fitchett claimed, or that his counsel failed to investigate Dawkin. Accordingly, Fitchett's unsubstantiated allegations are not sufficient to rebut *Strickland*'s strong presumption that his counsel provided reasonable professional assistance.

In his reply brief, Fitchett contends that rather than affirming the denial of his petition, this court should remand this case to the district court for that court to hold an evidentiary hearing to resolve the factual issue of whether Fitchett's counsel investigated Dawkin. Appellant Reply Br. at 23–24. "Our general rule is that an appellant abandons all issues not raised and argued in its initial brief on appeal." *Guilmette v. Howes*, 624 F.3d 286, 292 (6th Cir. 2010) (internal citation and alteration omitted). In his habeas petition, Fitchett asked the district court to grant him a new trial on the basis of his claim that his counsel was ineffective when he failed to investigate Dawkin or "in the alternative an evidentiary hearing to better develop the factual basis of the issue." R. 1 at PageID #29. Although the district court did not explicitly address Fitchett's request for an evidentiary hearing, the district court held that "[h]abeas relief . . . is not warranted on [Fitchett's] claims about trial counsel" and denied Fitchett's petition in its entirety. R. 15 at PageID #514, #521. Despite this denial, Fitchett did not contend in his opening brief on appeal that the district court abused its discretion in denying his request for an evidentiary hearing. Fitchett therefore abandoned an argument on appeal that he should have been granted an evidentiary hearing in the federal district court.

With respect to counsel's failure to investigate or call Oviedo, I agree as well that affirmance is warranted. The state court determined that Fitchett's ineffective-assistance-of-counsel claim failed because Oviedo's testimony would not have been admissible at trial, and this ruling is given deference under AEDPA. R. 8-14 at PageID #470. The state court's ruling applied to both Fitchett's claim that his counsel was ineffective when he failed to call Oviedo and to Fitchett's claim that his counsel was ineffective when he failed to investigate Oviedo. Essentially for the reasons given in part II.B.1.b of the majority opinion, the state court

reasonably applied clearly established federal law when it held that Fitchett failed to show that

his counsel was ineffective for failing to investigate or call Oviedo.