NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0082n.06

No. 21-1001

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>MICHAEL DARBY,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Petitioner-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>MIKE BROWN, Warden,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Respondent-Appellee.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Feb 24, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: BOGGS, WHITE, and READLER, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Petitioner Michael Darby (Darby), a Michigan prisoner, appeals the denial of his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Darby argues that the state court unreasonably applied federal law in denying his ineffective-assistance-of-trial-counsel claim. We disagree and AFFIRM.

**I.**

On July 15, 2013, a jury convicted Darby of armed robbery, in violation of M.C.L. § 750.529, assault with intent to do great bodily harm less than murder, in violation of M.C.L. § 750.84(1)(a), possessing a firearm while committing a felony (felony firearm), in violation of M.C.L. § 750.227b(1), and two counts of felonious assault, in violation of M.C.L. § 750.82(1). Darby is currently serving a combined total indeterminate sentence of 249 months to 42 years of imprisonment.

Darby's convictions arose from the armed robbery and shooting of eighty-year-old Stanley Sowa (Sowa) in front of his two grandnieces, Alexus and Angelica. In affirming Darby's convictions on direct appeal, the Michigan Court of Appeals summarized the facts as follows:

> On March 25, 2013, two men robbed Stanley Sowa outside his home in Detroit. Sowa, who was 80 years old at the time of trial, was with his two grandnieces. As Sowa stopped on the sidewalk to pick up a bag of candy that one of his nieces had dropped, a man grabbed Sowa's arm, wrestled him to the ground, and took his wallet from his pocket. Another man, with a silver-colored gun, shot Sowa in the head. Both men fled after the robbery. Although Sowa could not identify either of the two men, Sowa's grandnieces both identified [Darby] as the gunman and Thomas[1] as the man who wrestled with Sowa. One of the grandnieces also identified the two defendants in live lineups before trial.
>
> The prosecution presented other-acts evidence that [Darby] fired a gunshot in a similar robbery against a woman with a young child the following day[, on March 26, 2013,] where he was accompanied by an unidentified associate. The court admitted the evidence over objection for its relevancy in establishing [Darby]'s scheme or plan and his identification as one of the persons who robbed Sowa, and to show [Darby]'s intent, specifically that he shot Sowa purposefully and not by accident. The court instructed the jury that this evidence was admitted and could be considered only against [Darby].
>
> Both defendants were arrested on March 27, 2013, after a vehicle occupied by three men crashed into a garage during a police chase. Officer Randolph Sturley identified both Thomas and [Darby] as passengers of the vehicle. Detroit Police Officer Andrew Berry testified that Thomas was arrested in the back yard of a home during a search for the men.
>
> Thomas testified at trial and denied any involvement in the charged robbery. He also denied being in the vehicle involved in the police chase, and testified that he was arrested in front of a home while walking to a gas station. Thomas denied being related to [Darby], and denied even knowing [Darby] before he and [Darby] were both charged with robbing Sowa.

*People v. Darby*, No. 317849, 2015 WL 3757506, at *1 (Mich. Ct. App. June 16, 2015). Darby's application for leave to appeal to the Michigan Supreme Court was denied. *People v. Darby*, 876 N.W.2d 542 (Mich. 2016).

---

[1] The co-defendant's name is Thomas Darby. The co-defendants claimed no relation to one another.

Darby then sought habeas relief in federal court, filing an initial petition, after which he was permitted to return to state court to exhaust several new claims (including the claim at issue here) and, after exhausting the new claims in state court, filed an amended petition, the denial of which he now appeals.

In his state post-conviction motion, Darby argued that his trial counsel failed to effectively address Angelica's March 25th witness statement in which she described an assailant who had a "beard."[2]  *See* R. 21-2, PID 1592.  Darby provided new evidence consisting of two Instagram photographs—one posted to Darby's Instagram account on the day of the robbery and one posted three days before the robbery—that allegedly contradict Angelica's description of Darby to police as having a "beard."  *See* R. 21-2, PID 1583–84.  Darby argued that these photographs were relevant to his defense because Angelica described the gun-wielding assailant as a man with a "beard," but the two photographs showed that at the time of the robbery, Darby had only a small amount of hair on his upper lip and chin—which he claimed was not a "a beard or noticeable facial hair."[3]  *See id.* at 1584.  The first Instagram photo, dated March 22, 2013, appears to show Darby clean-shaven.  However, the second Instagram photo, dated March 25, 2013—the date of the robbery and assault—appears to show a line of facial hair above Darby's upper lip, and what appears to be either hair growth or a very dark shadow under his chin.

---

[2] Darby also argued that this newly discovered evidence supported a claim for actual innocence, but the certificate of appealability does not include this claim.

[3] In Darby's later amended petition for habeas corpus, he adjusted his characterization of the two photographs and stated that they described him as having "*barely noticeable* facial hair on the day of the offense and two days before the offense."  R. 18, PID 1443 (emphasis added).  Darby also acknowledged in his habeas petition that the "two photographs . . . fairly mirror[ed] how he looked at his preliminary examination hearing," *id.*, and characterized his facial hair on the day of the hearing as "on his chin and above his top lip, and barely noticeable."  *Id.* at 1442.

In its opinion and order denying Darby's post-conviction motion for relief from judgment, the state circuit court rejected Darby's claim that trial counsel was ineffective in failing to investigate and introduce into evidence the photographs showing Darby allegedly without a beard. After setting forth the two-part standard for determining ineffective assistance of counsel at trial, articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the court concluded:

> Based on the existing record, defendant is unable to demonstrate ineffective assistance of counsel. First, defendant is unable to demonstrate that trial counsel's performance was deficient. As defendant's previous arguments have all failed to meet the criteria set forth in MCR 6.508(D) to establish relief from judgment. Second, trial counsel cannot be found to be ineffective for failing to object to meritless arguments. In order to show prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." This Court does not find the trial counsel's alleged failure to investigate defendant's Instagram page to find a picture of him without facial hair as outcome determinative. Furthermore, two days after the crime against the victim, Stanley Sowa, defendant was arrested and Detroit Police Officer Sturley recovered a silver handgun defendant had dropped, as he tried to escape, and defendant's arrest photo clearly showed him with a mustache and a goatee. Moreover, the Instagram photo defendant purports to show him without any facial hair, upon closer inspection, actually shows defendant to have had a six o'clock shadow.

R. 21-1, PID 1518–19. Darby sought to appeal to the Michigan Court of Appeals and the Michigan Supreme Court, but both denied leave to appeal in one-sentence orders. *See People v. Darby*, No. 347278 (Mich. Ct. App. Apr. 23, 2019), *lv. denied,* 934 N.W.2d 244 (Mich. 2019).

Darby then returned to the district court and amended his habeas petition. The district court denied relief, concluding that Darby had "not established that the [state] trial court unreasonably applied *Strickland* when it found a lack of prejudice from counsel's failure to discover and introduce the photographs." R. 26, PID 1782. Although the court agreed that the photographs "would have demonstrated a disconnect between the eyewitness identifications of the assailant and Darby's appearance at the time of the offense," it found that the "disconnect was fully presented

to the jury at trial even without the photographs" given that the prosecution "*conceded* during its closing argument that the eyewitnesses described the assailant as having a full beard and that at the time of the offense Darby may have had only hair under his chin and a mustache." *Id.* at 1782–83.

The district court granted a certificate of appealability on the issue of ineffective assistance of trial counsel "arising from the failure of Darby's counsel to discover and introduce into evidence the two photographs of Darby taken shortly before and after the robbery." *Id.* at 1791.

## II.

## A.

Under § 2254(d) of AEDPA, a district court may not disturb a state court's ruling with respect to any claim that was adjudicated on the merits unless the adjudication resulted in a decision that:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme court on a question of law" or "if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Van Tran v. Colson*, 764 F.3d 594, 604 (6th Cir. 2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case." *Moore v. Mitchell*, 708 F.3d 760, 774–75 (6th Cir. 2013) (quoting *Williams*,

529 U.S. at 413). Ultimately, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

In determining whether the state court unreasonably applied federal law, we review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010). Darby raised his ineffective-assistance-of-counsel claim in his post-conviction motion for relief from judgment. After the state trial court denied that motion, the Michigan Court of Appeals and the Michigan Supreme Court both summarily denied his applications for leave to appeal. *Darby*, No. 347278, *lv. denied,* 934 N.W.2d 244. Accordingly, because the state trial court was "the last state court to issue a reasoned opinion" on Darby's IATC claim, we review its analysis. *Hoffner*, 622 F.3d at 505; *Stermer v. Warren*, 959 F.3d 704, 723 (6th Cir. 2020) ("Both the Michigan Court of Appeals and the Michigan Supreme Court denied [the petitioner]'s claims without a reasoned opinion. Thus, we must 'look through' to the state trial court's decision to determine [the reasoning of the higher courts].").

**B.**

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at trial. *Beasley v. United States*, 491 F.2d 687, 692 (6th Cir. 1974) (citing U.S. Const. amend. VI). Darby claims that trial counsel's failure to investigate and introduce the two Instagram photos into evidence constituted a denial of his Sixth Amendment right to the effective assistance of counsel. He argues that the photographs, which "show that Mr. Darby only had a small amount of facial hair on his upper lip and chin and did not have a beard," are "directly contrary" to Angelica's description of the assailant as "ha[ving] a beard." Appellant's Br. at 16.

This evidence, Darby says, "would have substantially undermined the prosecution's ability to identify him as the assailant." *Id.*

To establish that counsel rendered unconstitutionally ineffective assistance at trial, Darby must demonstrate that 1) his "counsel's performance was deficient"; and 2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Under this standard, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotations omitted). A defendant's claim of ineffective assistance of counsel can fail on either prong. *See Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) ("[P]etitioner must satisfy *both* prongs."). Here, because Darby's claim fails on the prejudice prong, we need not address the deficiency prong. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant.").

To demonstrate prejudice, Darby must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. A "reasonable probability" is one that "undermine[s] confidence in the outcome." *Id.* The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his *actual* and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (internal quotations omitted). "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (6th Cir. 2011)). When analyzing ineffective assistance claims, we consider "the totality of the evidence—both that adduced at trial,

and the evidence adduced in the habeas proceeding." *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005) (internal quotations omitted).

When AEDPA deference applies to *Strickland* claims, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105).

**III.**

The parties dispute whether AEDPA's deferential standard or *Strickland*'s de novo review standard applies. Darby argues that the state court misapplied *Strickland* by unreasonably elevating his burden from the proper standard of showing a "reasonable probability that," but for his counsel's failure to discover and offer into evidence the Instagram photos, "the result of the proceedings would have been different," to a higher burden of showing that counsel's error was "outcome determinative." Appellant's Br. at 21–22*; Strickland*, 466 U.S. at 694. However, we need not decide whether AEDPA deference applies in this case because, even under de novo review, Darby cannot show that his trial counsel's performance prejudiced his defense under *Strickland*. 466 U.S. at 694.

**A.**

Although the two Instagram photographs were not mentioned or presented during Darby's trial, the question whether Darby had facial hair—and if so, whether his facial hair constituted a "beard"—came up multiple times. During Darby's counsel's cross-examination of Angelica, the following exchange took place:

> [Darby's Counsel]: And you were very specific in your assertions that you – when the police officer asked you to describe the individual that had the gun, you were very specific in saying he had a beard, right?

[Angelica]: I thought he had a beard.

[Darby's Counsel]: Is that what it says in your statement on [the] day that you saw this happen and you talked to the police?  Didn't you tell him the guy had a beard?

[Angelica]: Yes.

…

[Darby's Counsel]: [Handing Angelica a photo] That's a picture of [a] photo line-up that you saw back on the 28th, right; about three days after this happened to your uncle?

[Angelica]: Yes.

…

[Darby's Counsel] And in fact, you picked out Michael [Darby], all the way in the back [of the lineup photograph].  He doesn't have a beard, does he?

[Angelica]: No.

R. 12-8, PID 625–28.

The state introduced a photograph from Darby's arrest report, taken at the precinct two days after the robbery, in which Darby has noticeable facial hair under his chin and above his upper lip.  The authenticating witness—the police officer in charge of Darby's case—described Darby in the arrest photo as having "a goatee," or "some mustache and a little bit [of hair] under the chin." *Id.* at 705–06.  The word "goatee" was also used by Darby's counsel to describe Darby's facial hair on the day of trial while eliciting testimony from Alexus that Darby had a "goatee" on that day.  *Id.* at 595 ("Isn't it fact that [this] gentlemen has a goatee, right; that gentleman there, right?" "Yes.").

Later, in closing arguments and rebuttal, Darby's counsel and the prosecutor argued their own characterizations of Darby's facial hair, in light of Angelica's description in the police report:

Prosecutor Closing Argument:

You're also going to see that every single one of [the men in the lineup from which Angelica identified Darby to the police] has facial hair of some sort.  None of them are cleaned *[sic]* shaven.  Now Michael Darby is at the end, the last guy.  And the picture is darkened and you can't really see very well.  But you are going to be

-9-

given the arrest record which we had admitted into evidence as Exhibit Number 7. It shows Michael Darby and his arrest date which was March 27th. And this is it. You'll see a little picture of him, but you can clearly see he has a mustache and he has hair under his chin. And the written word here says, it's a goatee.

Now Angelica didn't know the word goatee. She's 11 years old. She's a girl. She doesn't know the word goatee. She describes it as a beard. Well, he does have facial hair under his chin. A lot of people would call that a beard if they don't know the word goatee. But she's not wrong about that.

R. 12-10, PID 995–96

Defense Counsel Closing Argument:

Also the perpetrator that occurred in this case on March 25th, the issue was an important description. He had a beard. He's an 18 year old kid. A light complected 18 year old kid. There's no possible way that this kid can grow a beard. Yet, three witnesses all said that guy who had the gun, he had a beard. It's physically impossible.

*Id.* at PID 1011.

Prosecutor Closing Rebuttal:

So [Darby's counsel] tells you that it's physically impossible for an 18 year old to grow a beard. I don't know if it is or isn't. But no one ever said Michael Darby had a beard like [Darby's counsel] is referring to. And you know from an exhibit I showed you earlier, he has facial hair. He has hair under his chin. He has a mustache. No one ever asked [A]lex[i]s or Angelica [to] describe this beard. How would you define beard. So when someone has hair under their face, under their chin, it's not uncommon for someone to refer to that as a beard. And clearly Mr. Darby, Michael Darby had that. The pictures showed that he did . . . .

*Id.* at PID 1028–29.

## B.

Darby argues that his trial counsel was ineffective for "failing to discover and introduce into evidence the two photographs which show that Mr. Darby only had a small amount of facial hair on his upper lip and chin and did not have a beard," and that this failure prejudiced him because the photographs "would have substantially undermined the prosecution's ability to identify him as the assailant" given that "identification [is] the critical issue." Appellant's Br. at 15–16. But

Darby has not shown that the two photographs would have meaningfully impacted his trial in any way, let alone "substantially undermined" the prosecution's case. The jury had Darby's arrest photograph from two days after the robbery and assault. And Darby's counsel stated in front of the jury that Darby had a "goatee" on the day of trial. R. 12-8, PID 595. This is consistent with the hair growth that can be seen on Darby's face in the Instagram photo from the day of the assault that he says should have been introduced into evidence. Thus, even without the two photographs, the jury had a visual reference point and description when they considered Darby's counsel's argument that Darby's facial hair was too insignificant to be called a "beard." *See id.* at 625–28; R. 12-10, PID 1011.

The jury also heard the prosecutor acknowledge that Darby's facial hair—what the prosecutor referred to as a "goatee"—was arguably not a beard. R. 12-10, PID 995–996. Finally, and critically, the jury heard Darby's counsel elicit from Angelica—the witness who described the assailant as "beard[ed]" and who ultimately identified Darby in a police lineup—a concession that Darby "doesn't have a beard." R. 12-8, PID 628. This concession from a key eyewitness that the word "beard" may not have applied to Darby's facial hair, together with the photographs that were admitted and the extensive argument of counsel about what constitutes a "beard," was sufficient to inform the jury of the scant nature of Darby's facial hair, the imprecision of Angelica's description in the police report, and the fact that Angelica did not consider Darby's facial hair to be a "beard."

It is not clear what, if anything, the photographs would have added to the jury's observation of Darby during trial and the concessions made by Angelica and the prosecutor regarding the use of the term "beard." We cannot find prejudice in counsel's failure to present additional evidence when the evidence "would have added nothing of value." *See Bobby v. Van Hook*, 558 U.S. 4, 12

(2009) (concluding that counsel's failure to interview extended relatives in order to better help "narrate the true story of [the defendant's] childhood experiences" was not prejudicial because the witnesses would have adduced only "minor additional details").

Additionally, Darby does not address the probative value of the two photographs when viewed in light of the additional evidence presented against him. We must address the "totality of the evidence" when analyzing prejudice claims on habeas, *Towns*, 395 F.3d at 257, and here there was significant additional evidence suggesting that Darby committed the offenses of which he was convicted. Darby does not account for the fact that, even if Angelica's description of the bearded man to the police was imprecise or inaccurate, she still identified him in a police lineup several days after the assault. *Darby*, 2015 WL 3757506, at \*1. Nor does Darby address the likely effect of the photographs when considered in light of his possession of a silver handgun when arrested—which matched Angelica's description in the police report, *id.*—or the weight of the photographs in light of the other-acts evidence suggesting that he had a modus operandi in armed and accompliced robberies. *See id.*

In short, the photographs did not actually refute the prosecution's witness-identification evidence or undermine the weight of the other evidence against Darby. At best, they would have provided cumulative support for a theory that was already made clear to the jury. "Courts have routinely found no prejudice where there exists [inculpatory] evidence other than that which the potential evidence would have contradicted and the defendant's proposed evidence would not directly refute the prosecution's." *Fitchett v. Perry*, 644 F. App'x 485, 492–93 (6th Cir. 2016) (concluding that counsel's failure to cross-examine two character witnesses did not prejudice the defendant because, even had the witnesses testified, they could not actually "corroborate [the

defendant's] account of the altercation" and "would not have contradicted the other evidence that helped to convict [him]").

## IV.

Because Darby has not shown that counsel's failure to discover and offer the two Instagram photographs into evidence prejudiced his defense, we AFFIRM.