Filed 11/3/21  P. v. Castillo CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>MITCHELL CASTILLO,<br><br>　　Defendant and Appellant. | B304930<br><br>(Los Angeles County<br>Super. Ct. No. BA463608) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stacy S. Schwartz and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Mitchell Castillo appeals from a judgment of conviction for first degree murder and carjacking, contending the trial court erred in admitting hearsay testimony and evidence of uncharged acts.  We affirm.

## BACKGROUND

Castillo stole a pickup truck from Ricardo Mota in a public parking structure, running over and killing Mota in the process.

He was arrested a few hours later in San Fernando Valley, standing next to the truck, and the parking attendant came to identify him.  Mota's DNA was found on Castillo's clothing, the truck, and the parking structure.  Castillo's DNA was found in the truck.

At trial, Castillo's defense was that he meant only to steal the truck, not to injure Mota.

Raul Infante, the parking attendant, testified that Mota often parked his truck in the public structure.  At 5:46 p.m. on December 11, 2017, Infante observed Castillo walk past the parking booth to the elevator.  The encounter was captured on time-stamped surveillance footage, which was played for the jury.  Twelve minutes later, a catering van stopped at the booth prior to exiting and the driver said that two men were arguing and fighting on the roof.

Infante saw Castillo exit the structure driving Mota's truck.  The surveillance footage showing that this occurred at 6:02:31 p.m.  Seven seconds later, at 6:02:38 p.m., a red Saturn with two construction workers stopped at the booth, and one of the workers pointed at Mota's truck ahead of him and said that the driver had gotten into a fight with the truck's owner and took the truck and ran over the owner.  The construction workers were never identified or located.

2

Infante found Mota lying on the ground of the rooftop parking lot.  Mota died at the scene from multiple blunt force injuries consistent with him having been hit by a truck.

Castillo was convicted of first degree murder (Pen. Code, § 187)[1] and carjacking (§ 215), and it was found true that he had suffered two prior serious or violent strike convictions (§§ 1170.12, subd. (b); 667, subds. (b)-(j)) and two prior serious felony convictions (§ 667, subd. (a)), and had served four prior prison terms (§ 667.5, subd. (b)).  The court sentenced him to an indeterminate term of 85 years to life, comprising 25 years to life for first degree murder, tripled pursuant to the "Three Strikes" law, plus five years for each of the two prior serious felony convictions.  The court stayed the sentence on the carjacking count pursuant to section 654 and imposed various fines and fees.

## DISCUSSION

### A. Evidence of Uncharged Misconduct

Castillo contends the trial court erred in admitting evidence of four prior uncharged acts.  We disagree.

#### 1. Relevant Proceedings

During trial, the prosecution moved to admit evidence of five uncharged incidents where Castillo was observed either stealing or preparing to steal a car:

On October 9, 2011, a Beverly Hills police officer stopped Castillo while he was driving a stolen Lexis.

On October 24, 2012, a Los Angeles Police Department officer observed Castillo in a parking lot, carrying a backpack and looking into the driver's side window of a black 1995 Chevy

---

[1] All undesignated statutory references will be to the Penal Code.

Camaro. He had in his possession a pair of black gloves, a nail file, a pair of black brass knuckles, and a pair of pliers.

On April 11, 2014, at around 4:00 a.m., a security guard for the Church of Scientology on Hollywood Boulevard and Ivar Avenue observed Castillo "checking out cars" on Ivar. He eventually dropped his backpack behind a car, crossed the street, and put on brass knuckles to break a car's window, backing away only after a street sweeper drove by. He was arrested nearby in possession of the brass knuckles.

On June 22, 2014, a security guard at a parking structure observed Castillo looking into multiple parked vehicles.

Castillo's defense counsel objected to the evidence on the ground that its unduly prejudicial effect substantially outweighed its probative value. Counsel argued, "I am not contesting the intent aspect of the People's [Evidence Code section] 1101(b) evidence because the car was taken, the witnesses saw purportedly my client driving the car out. So the taking is not an issue. That's why I argue under [Evidence Code section] 352. [¶] The other aspect of it, the People argued common plan. And it's the same argument. It's not in issue. The People I think they're going under felony murder. I don't know for sure. [¶] Because if they can get the murder either by implied malice. I am going to argue implied malice; that he engaged in conduct that was dangerous and led to the victim's death. He may argue felony murder. So my contention about the other crimes evidence is we're not disputing that [Castillo] was there, because they have DNA evidence. The victim's blood is on [Castillo's] pants. [Castillo's] DNA is in the car. Officers retrieve[d] car keys from [Castillo].

4

The trial court found that the evidence was admissible under Evidence Code section 1101, subdivision (b), and did not contravene Evidence Code section 352, stating: "[The] Court is inclined to permit it. [The] Court is not inclined to permit Mr. Przelomiec to go on for days and days and days about these individual acts and inciden[ts] that he had. I think Mr. Przelomiec has the experience enough to know that he brings in whatever information he needs and leaves it at that. So I am inclined to introduce it and make use of it. That will be admitted and Court overrules the [Evidence Code section] 352 objection."

The court instructed the jury not to "conclude from this eviden[c]e that the defendant has a bad character or is disposed to commit crime," and instructed that the evidence of prior actions was "not sufficient by itself to prove that the defendant [was] guilty of counts 1 and or 2."

## 2.    Legal Principles

Absent a statutory exception, relevant evidence is admissible. Evidence is relevant if it has any tendency in reason to prove or disprove any disputed fact of consequence to the determination of an action. (Evid. Code, § 210.)

However, evidence of a specific instance of a person's conduct is inadmissible when offered to prove his or her conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) But such evidence is admissible if relevant to prove some material fact other than the defendant's disposition to commit a crime, such as intent. (Evid. Code, § 1101, subd. (b); *People v. Kelly* (2007) 42 Cal.4th 763, 783.) Evidence of uncharged conduct is relevant to prove intent where the conduct is "sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same

intent in each instance." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Because evidence of an uncharged offense is highly prejudicial, it must have considerable probative value, and the trial court must carefully analyze it under Evidence Code section 352 to determine whether its probative value is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; see *People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404; see also *People v. Humiston* (1993) 20 Cal.App.4th 460, 481 ["evidence of prior bad acts always involves the risk of prejudice regardless of its probative value"].)

A trial court's admission or exclusion of evidence will not be disturbed on appeal "*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

### 3.    Application

Here, the prior incidents "have a direct logical nexus" to Castillo's intent to steal Mota's truck (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15), as they all involved Castillo either driving a stolen car or preparing to steal one. Castillo's prior activities tended in reason to establish the absence of accident or mistake in taking Mota's truck.

The unduly prejudicial impact of the evidence potentially arose from its tendency to imply that Castillo had a bad character or was disposed to commit crime. But the court instructed the jury not to consider the evidence for these purposes, and we

6

presume the jury understood and followed the instruction. (*People v. Hinton* (2006) 37 Cal.4th 839, 864.)

Further, admission of the evidence of prior incidents had little tendency to confuse the issues or inflame the jury. The incidents were recent, having occurred within six years of the current offenses, and were far less inflammatory than the carjacking and murder, reducing the possibility that the jury's passions would be aroused by the uncharged conduct.

We therefore conclude that the trial court acted within its discretion in finding the probative value of the evidence of Castillo's prior conduct was not substantially outweighed by any unduly prejudicial effect it might have had.

Castillo argues evidence of his prior conduct tended to prove only his intent to steal Mota's truck, not to confront Mota or engage in violence. He argues that the probative value of the evidence was therefore nonexistent because he expressly declined to contest the issue of intent. We disagree.

Carjacking has five elements: (1) taking a motor vehicle while it is (2) in the immediate possession of another, (3) against his or her will, with (4) intent to permanently or temporarily deprive the person in possession of the car, by (5) using force or fear. (§ 215, subd. (a).)

We acknowledge that Castillo's defense counsel expressly declined to contest the issue of intent, stating he did so "because the car was taken, the witnesses saw purportedly my client driving the car out. . . . I am going to argue implied malice; that he engaged in conduct that was dangerous and led to the victim's death. . . . [W]e're not disputing that [Castillo] was there, because they have DNA evidence. The victim's blood is on

7

[Castillo's] pants.  [Castillo's] DNA is in the car.  Officers retrieved car keys from [Castillo].

But in pleading not guilty, Castillo put each of the elements of carjacking at issue notwithstanding his concession on the issue of intent to steal Mota's truck.  (*People v. Balcom* (1994) 7 Cal.4th 414, 422-423; *Estelle v. McGuire* (1991) 502 U.S. 62, 69 [defendant's decision not to contest one element of an offense does not relieve the prosecution of its burden to prove every element of the crime].)  Therefore, although Castillo's identity and intent to steal the truck were not *contested*, they were still at issue, and the evidence of uncharged offenses was probative on those issues.  Because the evidence took little time to present, there was no probability that its admission necessitated undue consumption of time.  Because the evidence was no more inflammatory than the evidence that Castillo ran over and killed Mota, we cannot conclude that any unduly prejudicial effect its admission may have had *substantially* outweighed its probative value.

**B.     Hearsay**

Castillo contends the trial court erred in admitting an unidentified construction worker's statement—as related by Infante—to the effect that Castillo ran over Mota.  We disagree.

### 1.     Relevant Proceedings

Before trial, the prosecution moved to admit a construction worker's hearsay statement that the driver of the truck just ahead of him in the parking structure had taken the truck from the owner and then ran over him.  The trial court concluded the statement was admissible under Evidence Code section 1240 as a spontaneous utterance.

At trial, Infante testified that seconds after Castillo exited the parking structure, a red Saturn stopped at the parking booth

8

and one of the occupants pointed at Mota's truck and said that the guy driving it "actually drove the victim's car[, and] had just gotten into a fight with him, took his car and, like, ran him over with the truck."

### 2. Legal Principles

Hearsay evidence is a statement made by a witness not testifying at the hearing and offered to prove the truth of the matter asserted. (Evid. Code, § 1200, subd. (a).) Hearsay is inadmissible unless an exception applies. (Evid. Code, § 1200, subd. (b).)

"Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) " 'To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' " (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) Statements made under the immediate influence of an occurrence to which they relate are deemed sufficiently trustworthy to be presented to the jury based on the common understanding " 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and

9

sincere expression of one's actual impressions and belief.' " (*Showalter v. Western Pac. R. Co.* (1940) 16 Cal.2d 460, 468.)

Whether the requirements of Evidence Code section 1240 have been met is a question of fact largely within the discretion of the trial court. (*People v. Cowan* (2010) 50 Cal.4th 401, 462.)

### 3. Application

Here, the construction worker saw Castillo fight with Mota, steal his truck, and run him over with it, which the worker related to Infante only moments later. A person being run over by a truck is an extreme and upsetting event. It was within the trial court's discretion to find this to have been a recent event that was startling enough to produce nervous excitement in the worker, and therefore to allow his statements to go to the jury.

Castillo argues there was no evidence that the worker who spoke to Infante actually saw the events leading to Mota's death, as he could have heard about them second-hand, either from the other occupant of the Saturn or someone else. We disagree.

DNA evidence and Castillo's possession of Mota's truck showed that Castillo stole the truck and ran over Mota before exiting the parking structure. The Saturn was literally seven seconds behind Castillo, who was still in view when the Saturn pulled up to Infante. The trial court could reasonably infer from this sequence of events that (1) any incident witnessed by the other occupant of the Saturn would have been witnessed by the speaker, and (2) there was no time for the speaker to have learned of the incident from some other third party.

10

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

                                            CHANEY, J.

We concur:


        BENDIX, Acting P. J.


        CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.